[S. F. No. 6190. Department One.—December 8, 1913.]

## JONAH MYERS, Appellant, v. JOHN BERVEN, Respondent

EASEMENT—RESERVATION OF RIGHT OF WAY BY GRANTOR—NOTICE TO SUCCESSOR IN INTEREST.—A purchaser of land is chargeable with notice of a right of way over it reserved by a predecessor in title in a deed which is one of the instruments in his chain of title.

ID.—RIGHT OF WAY—WHETHER APPURTENANT OR IN GROSS.—If such reservation is distinctly of an easement over the soil by a defined route, and withholds from the conveyance that much of the estate otherwise conveyed, the right of way cannot be said to be merely an easement in gross and personal to the grantor who reserves it, but it is an easement appurtenant which passes with the land.

ID.—WAY RESERVED FOR ONE TRACT—USE FOR BENEFIT OF ANOTHER.— A private way granted or reserved to one person for use in connec-

tion and as an appurtenance to specified land, cannot be used as of right for the benefit of another parcel.

Id.—Prescriptive Right to Way—When Established.—Where one who has obtained a full equitable title to a right of way openly and uninterruptedly uses the way under claim of right for five years, he establishes an easement by prescription against the owners of the land across which it lies.

Id.—Uninterrupted Use of Way—What Constitutes.—In order to establish a way by prescription, it is not necessary for the claimant to use the way every day. If he uses it from time to time, whenever he needs it, this amounts to a continuous use within the rule that an adverse use must be uninterrupted in order to constitute the basis of a title by prescription.

Id.—Title by Prescription—Manner of Pleading.—An allegation in a cross-complaint that the defendant is the owner of a right of way described sufficiently puts in issue title by prescription thereto without specially pleading it. Such allegation may be sustained by proof of title acquired in any legal mode; and a title by prescription is a legal title.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

T. J. Butts, for Appellant.

L. G. Scott, for Respondent.

SHAW, J.—The controversy in this case relates to the existence of an easement for a private roadway leading from defendant's land, over the land of plaintiff, to a public road. The plaintiff appeals from the judgment in favor of the defendant upon his cross-complaint.

The tract of land belonging to Myers, over which the easement is claimed, contains a little over five acres. It is 14.67 chains long from north to south and 3.62 chains in width. The complaint of Myers alleges that he is the owner of the tract, that Berven threatens to and will, unless enjoined, enter thereon and pass over the same on foot and in vehicles, and prays for an injunction to prevent the same. Berven, by cross-complaint, alleges that he is the owner of an easement over said land consisting of a private roadway twelve feet in width extending from the southwest corner of the tract along

the west line northerly about one hundred and sixty feet, thence easterly across the tract to the east line and thence north along the east line to a connection with the public road at the northeast corner. The main question is, Does the evidence support the finding that Berven is the owner of the roadway as described in his cross-complaint?

The land of both parties is embraced in a tract of twenty acres known as lot 3 of Thompson's subdivision. Prior to June 11, 1904, this lot was owned by one George P. Baxter, except a strip extending from the southeasterly corner diagonally through the lot and intersecting the west line about three hundred feet south of the northwest corner, which strip Baxter had conveyed to the Petaluma and Santa Rosa Railway Company for its railroad, and also excepting an acre in the southeast corner easterly of the strip conveyed to the railroad. This one-acre tract Baxter had conveyed to one George W. Johnson on April 13, 1904, also granting to Johnson a twelve-foot private roadway along the east line of the lot from the said acre to the public road aforesaid at the northeast corner of the twenty-acre lot, being a part of the line of the roadway here in controversy. Across the strip given to the railroad, Baxter had reserved a right of way for a crossing from the land now owned by Berven to connect with the roadway herein claimed by Berven. Louis Johnson, John Froynes, and John Berven, the defendant, agreed with Baxter to buy of him the said lot, except the strip granted to the railroad and the one-acre tract conveyed to George W. Johnson. After the agreement to purchase had been made and before Baxter executed a deed pursuant thereto, the parties agreed upon a partition of the lot between them and that the partition should be effected by having Baxter make separate deeds conveying to each the part allotted to him. Berven was to have the triangular part lying westerly of the railroad, containing 7.42 acres, Froynes was to have the westerly part of the remainder, about six chains in width and containing 5.50 acres situated in the northwest corner of the twenty-acre tract. Johnson was to have the eastern part of this remainder containing 6.03 acres. It was a part of this agreement that Berven should have a private roadway along the west side of the Froynes's allotment to the public road, a way not in issue here, and that he should also have a roadway across and over the part allotted

to Johnson, upon the line which he now claims and leading to the public road at the northeast corner. This way was laid out along this line before the deeds were executed. In consideration of these ways, Berven paid a larger price per acre for his allotment than the others paid for theirs. The purchase money was then paid in a lump sum to Baxter and, at their request, he conveyed to each the part so allotted to him by the agreement of partition. The deeds were executed on June 11, 1904. In conveying to Berven he granted to him also the right of way agreed on along the west line of the Froynes's tract, and in conveying to Froynes this way was reserved. The deed to Berven, however, did not mention the way agreed on over the Louis Johnson tract. In the deed to Johnson a way fifteen feet wide along the east line and extending from the one acre sold to George W. Johnson north to the public road, was reserved, but no mention was made of the way from the railroad crossing across the Louis Johnson tract to the east line thereof, nor was any way whatever reserved for the benefit of Berven in either of the deeds from Baxter, except that across the Froynes's tract.

Louis Johnson recognized the right of Berven to a way across and over his land to the public road by the route here claimed and Berven freely used such way, while Johnson held the title, without objection or interruption by Johnson. On May 10, 1905, Louis Johnson sold his tract to B. F. Emery. The deed contained the following reservation: "Reserving and excepting also a right of way not to exceed 12 feet in width described as follows": and then giving a description of that part of the way in question extending from the railroad crossing to the east line of the Johnson lot where it connected with the way aforesaid granted to George W. Johnson. The remainder of the way in controversy leading from the said connection north to the public road was not referred to. The clause closed with the words: "The said private way to be of the width not to exceed 12 feet, only the right of private way and not the soil is hereby reserved and excepted." On September 27, 1907, Emery conveyed the Louis Johnson tract to one Sanborn who, in September 6, 1910, conveyed it to one Lindley. Lindley on November 7, 1910, conveyed it to plaintiff Myers. None of the deeds after the one made to Emery by Johnson contained any reference to the way in question.

Emery and Sanborn, however, both knew of and recognized Berven's right to the entire way extending from his land to the public road and Berven continued to use it at will and. as often as he desired without objection from either of them during the entire time of their respective ownerships. No objection was made to such use by Berven until Lindley obtained his title in September, 1910. The railroad company had fenced its land and had put in a gate across this way at the point where it crossed the railroad from the Johnson tract. A gate was also put in at the north end of the way where it led into the public road. These gates and another one called the "middle gate," the location of which is not definitely shown, were in position before and at the time Lindley and Myers bought the land. There were at that time no marks of travel along the route of the way to indicate that it had been used, nor anything to show its existence except the gates.

On November 5, 1910, Louis Johnson executed a deed purporting to convey to Berven the entire way in controversy. This was on the same day upon which Lindley conveyed to Myers.

The court found that from June 11, 1904, until September 6, 1910, Berven had used and occupied the way in question as a road, continuously and as a matter of right. It also found that he was the owner of the way, describing it in detail.

The legal title to that part of the way leading from the railroad crossing through the Louis Johnson tract as far as the east line thereof was conveyed to Berven by the deed of Louis Johnson to him executed on November 5, 1910. Johnson had reserved this part of the way in his conveyance to Emery, hence he had not parted with the title to the easement and his conveyance to Berven transferred that title to the latter. Myers is charged with knowledge of the reservation in the deed to Emery, it being one of the deeds in his own chain of title. Consequently, with respect to this part of the way, the evidence shows that Berven had acquired title thereto by this conveyance and the finding of ownership is fully sustained thereby.

It is claimed that the reservation in the deed from Johnson to Emery was not a reservation of a right of way appurtenant to any land but merely of an easement in gross, personal to Johnson, and that it was not capable of assignment nor trans-

fer to Berven. We do not think this can be maintained. The reservation was distinctly of an easement over the soil upon a defined route. It withheld from the conveyance that much of the estate otherwise conveyed. Johnson retained no other interest in the land and Emery did not receive title to the portion of the estate reserved. As we shall presently see, however, Berven had also acquired title to this easement by prescription.

The title to the part of the roadway leading along the east line of the tract passed to Emery by virtue of the deed from Johnson to him and through Emery to Sanborn and Lindley and Myers, subject to any equitable right vested in Berven and to any claim of Berven to title by prescription. The parties seem to have acted upon the belief that the reservation in the deed to George W. Johnson of a right of way along the east line of the tract would enure to the use of Berven or to any person who desired to use it. If so it was an erroneous belief. A private way granted or reserved to one person for use in connection and as an appurtenance to specified land, cannot be used as of right for the benefit of another parcel.

That Berven had full equitable title to the entire way, including this part, up to the time Lindley purchased is clear. He had fully paid for the easement, had used it at his pleasure, and the previous owners were aware of his right. Myers, however, was a purchaser for value. He had notice of the right of way along the east line appurtenant to George W. Johnson's land and of Johnson's right thereto, but he had no actual notice, so far as appears, of the right over this way in favor of the Berven land. There being no record evidence of Berven's right over this part and no visible signs of use thereof by Berven sufficient to charge Myers with notice, the equitable title of Berven to the use of the way on the east line was not good as against Myers. As to this part, Berven's case rests solely on the claim that, prior to the sale to Myers or Lindley, he had acquired a legal title by prescription, as the court, in effect, found. As Berven had paid a valuable consideration for the entire way and his use thereof was in pursuance of the agreement between himself and the other parties at the time of the purchase from Baxter, it is obvious that the use by Berven was under claim of right and adverse to the owner of the land over which the way extended. It was used

by Berven openly, without leave from the owners, and this use was known to them, as was also the right by which he claimed it. It continued for more than five years before Lindley or Myers bought the land. There was no interruption of this use within the meaning of the rule that an adverse use must be uninterrupted in order to constitute the basis of a title by prescription. "If a right of way over another's land has been used for more than five years, it is not necessary, to make good such use, that the claimant has used it every day. He uses it every day, or once in every week, or twice a month, as his needs require. He is not required to go over it when he does not need it to make his use of the way continuous. . . . If, whenever the claimant needs it from time to time, he makes use of it, this is a continuous use. An omission to use it when not needed does not disprove a continuity of use, shown by using it when needed. Neither such intermission nor omission breaks the continuity." (*Hesperia* v. *Rogers,* 83 Cal. 11, [17 Am. St. Rep. 209, 23 Pac. 196].) "'Continuous use' does not necessarily mean 'constant use.' . . . How frequently is immaterial, provided it occurred as often as the claimant had occasion or chose to pass." (*Bodfish* v. *Bodfish,* 105 Mass. 319. See, also, *Webber* v. *Clark,* 74 Cal. 17, [15 Pac. 431]; *Montgomery* v. *Quimby,* 164 Cal. 253, [128 Pac. 403].) There was no hostile interruption or obstruction on the part of the owners of the servient tenement. This is the character of the interruption referred to in the rule as sufficient to destroy the continuity of adverse possession. The first interruption of that kind occurred when Lindley purchased the land in September, 1910, after five years' use was completed. The finding of a title in defendant is therefore sustained by his proof of title by prescription.

Appellant insists that the cross-complaint does not allege title by prescription and, hence, that it is not in issue. Such particularity of pleading is not required in actions of this character. The allegation is that Berven is the owner of the way described. This is sufficient. (*Hesser* v. *Miller,* 77 Cal. 193, [19 Pac. 375].) This allegation may be sustained by proof of title acquired in any legal mode. A title by prescription is a legal title. (Civ. Code, sec. 1007; *Watchumna W. Co.* v. *Ragle,* 148 Cal. 764, [84 Pac. 162].)

The objections to the evidence of the agreement between Johnson, Berven, and Froynes that Berven should have the roadway in question were not well taken.   The evidence was competent to show the origin and nature of Berven's title and to prove that his subsequent use was under claim of right, and adversely to the others, and not by mere permission.

No other points are made that require notice.

The judgment is affirmed.

Angellotti, J., and Sloss, J., concurred.