[Civ. No. 17415.   First Dist., Div. Two.   Oct. 14, 1957.]

JOSEPH J. APPLEBAUM et al., Appellants, v. DONALD SENIOR, Respondent.

Albert F. Skelly for Appellants.

John A. Nejedly for Respondent.

DOOLING, J.—Plaintiffs appeal from a judgment denying them an injunction against the use of the name "Junior Boot Shop" by defendant in the conduct of a shoe store for children in Walnut Creek in Contra Costa County.

On August 1, 1937, appellants and one Mullany opened a shoe store for children's shoes in San Francisco adopting the name "Junior Boot Shop." On July 16, 1937, they formed a California corporation under the name "The Junior Boot Shop" and on December 15, 1942, a certificate of doing business under the fictitious name of "Junior Boot Shop" was filed by them with the county clerk in San Francisco. These parties reincorporated in 1946 under the name "Junior Boot Shop, Inc." and a second certificate of doing business under the name of "Junior Boot Shop" was filed with the San Francisco county clerk by these appellants in 1949. The business grew and a store was established in San Mateo County in 1948. Later that year appellants bought all of the stock of the corporation from Mullany and his wife under an agreement by which the Mullanys received the San Mateo store with the right to use the name "Junior Boot Shop" in San Mateo County. A second store was opened by appellants in San Francisco and at the time of trial appellants had two stores in San Francisco and a third store in San Anselmo in Marin County. A large part of their business is in orthopedic and corrective footwear for children and they draw business from orthopedists and pediatricians who refer children needing such footwear to them. They advertise in various ways and expended for advertising in 1955 approximately $6,500. At the trial they introduced records of their business done outside of San Francisco from which it appears that they had 558 customers for children's footwear in 41 of the California counties.

In 1951 the respondent opened his store for children's footwear in Walnut Creek. He had been for some months previously employed by Mullany in his "Junior Boot Shop" in San Mateo County. He testified that Mullany suggested that he use the name "Senior's Junior Boot Shop" because he thought the combination made a catchy name. Since opening the store he has continuously operated under the name "Senior's Junior Boot Shop." A photograph of his store

front shows the word "Senior's" in script and the words "Junior Boot Shop" in Roman capitals. The word "Senior's" is comparable to the other words in size and equally legible. It is unmistakably an integral part of the business name. Respondent has advertised only in newspapers published in Contra Costa County and his customers are mainly from Walnut Creek and the territory immediately surrounding it. He has had two or three customers from San Francisco. After respondent opened his store in Walnut Creek, appellants knew that he was operating under the name "Senior's Junior Boot Shop" and they exchanged shoes with respondent when one store was out of a particular shoe which a customer wished to buy and the other store happened to have it in stock. This mutual accommodation between appellants' stores and respondent's store continued for "a couple of years."

In February of 1955 appellants formally requested respondent to discontinue the use of the words "Junior Boot Shop" and when he refused they commenced this action. The action went to trial in December 1955.

The words "Junior Boot Shop" are descriptive of the type of business in which the two adversaries are engaged. The word "shop" is descriptive of a place of business and is the practical equivalent of "store." The word "boot," while more strictly descriptive of a high shoe, is nonetheless frequently used to describe "shoes" in general. The word "junior," whose primary meaning is "younger," has acquired in common speech the secondary meaning of "juvenile" or "youthful." "Junior Boot Shop" is only a dressed-up way of saying "Children's Shoe Store." The words as such "are not subject to exclusive appropriation" (*Fidelity etc. Co.* v. *Federal etc. Co.*, 217 Cal. 307, 317 [18 P.2d 950]) and could not qualify for registration as a trademark (Bus. & Prof. Code, § 14242, subd. e).

However, appellants argue that as applied to their business the words have acquired a secondary meaning. (*Academy of Motion Picture Arts & Sciences* v. *Benson*, 15 Cal.2d 685, 688-690 [104 P.2d 650]; *H. Moffat Co.* v. *Koftinow*, 104 Cal. App.2d 560, 564-565 [232 P.2d 15].) Where a party relies on the doctrine of "secondary meaning" he must, of course, establish that the term in fact has acquired in the minds of the public an identification with his business. Appellants produced no direct evidence that the name "Junior Boot Shop" has acquired any such identification in the minds of the public generally, and particularly no evidence that it has acquired

such a meaning in the minds of the public in Contra Costa County which, with negligible exceptions, is the area from which respondent draws his trade. Appellants introduced evidence of advertising, some of which, by newspaper and by television for 13 weeks in 1952, reached residents of Contra Costa County. They introduced business records showing 33 customers resident in Contra Costa County—of these 15 had bought goods from them in 1955, and the other 18 had last made purchases in 1954 or 1953. We can take judicial notice that by the 1950 census Contra Costa County was shown to have a population of 298,984. (Gov. Code, § 28020.) Upon a total population of that size the impact of appellants' trade name as indicated by 33 customers in the entire county over a three-year period might well impress the trial judge as inconsequential. ▇ The question of unfair competition is one of fact for the trial court and depends in the last analysis on whether the public is likely to be deceived. (*Schwartz* v. *Slenderella Systems of Calif.*, 43 Cal.2d 107, 112 [271 P.2d 857]; *D & W Food Corp.* v. *Graham,* 134 Cal.App.2d 668, 677 [286 P.2d 77]; *Beverly Hills Hotel Corp.* v. *Hilton Hotels Corp.,* 134 Cal.App.2d 345, 350 [285 P.2d 1012]; *Grant* v. *California Bench Co.,* 76 Cal.App.2d 706, 707-708 [173 P.2d 817]; *Lerner Stores Corp.* v. *Lerner,* 162 F.2d 160.)

The Lerner case, last cited, in many of its facts is not dissimilar from the one presented by this record. The plaintiff was a chain store operator with a store in San Francisco but none in San Jose. Defendant opened a store in San Jose and plaintiff sought to enjoin his use of the name ''Lerner's.'' The trial court refused an injunction and the Circuit Court affirmed. Plaintiff had introduced evidence that it had some customers from San Jose, estimated at 324 transactions per year. (162 F.2d, p. 161.) The appellate court said of this evidence: ''In view of the record a finding to the effect that appellant had established a substantial nucleus of business in San Jose would be lacking in evidentiary support.'' (162 F.2d, p. 163.)

▇▇ While actual fraud is unnecessary and proof that the public will probably confuse the two businesses because of the similarity of names is all that need be made in order to entitle the plaintiff to injunctive relief (*Schwartz* v. *Slenderella Systems of Calif., supra,* 43 Cal.2d 107, 111-112) the court in this case found not only that respondent's use of the name was not fraudulent but further found that it is not true that the use of such name will tend, or is likely, to deceive

plaintiffs' customers, or that plaintiffs' customers would be likely to be, or were being, misled or that there is likelihood and great danger that customers exercising ordinary care will be deceived and misled by the imitation and use of said name. These findings negatived the only allegations of plaintiffs' complaint which charged unfair competition and, as we have indicated, are supported by the reasonable inferences which the court could properly draw from the evidence educed. Since the court could properly conclude that the name "Junior Boot Shop" was not generally identified with plaintiffs' business among the public of Contra Costa County its findings above summarized are supported by the evidence and the inferences properly to be drawn therefrom. As the Supreme Judicial Court of Massachusetts succinctly said in *C. A. Briggs Co.* v. *National Wafer Co.*, 215 Mass. 100 [102 N.E. 87, 90, Ann.Cas. 1914E 926] : "Where the secondary meaning of the words was unknown, no purchaser could have understood them in any but their primary sense, and no purchaser could have been deceived by their use."

Appellants rely on a finding that plaintiffs have acquired and now command an extensive patronage throughout the northern half of the State of California and now enjoy an extensive good will under said fictitious name. This finding also follows the allegation of the complaint. It falls short of a finding that the name has acquired a secondary meaning in that area by which the public would identify the business with the name or be confused or misled into believing that "Senior's Junior Boot Shop" had any connection with appellants' business, and this is particularly true as to Contra Costa County from which respondent draws his trade. ■ The findings must be construed if reasonably possible to support the judgment and must be read together and reconciled for that purpose. (4 Cal.Jur.2d, Appeal and Error, § 571, p. 444.) So construed the findings support the judgment. Appellants' main reliance is upon cases where the secondary meaning of the name was well established in the area involved and such cases may be readily distinguished on that ground.

■ Two subsidiary points are urged by appellants. The court found that appellants had established a good will and extensive business in Northern California for orthopedic shoes, but not for nonorthopedic footwear. The finding is not material since the important and controlling finding is that there is no probability of public confusion from the similarity of names. However, so far at least as Contra Costa County

is concerned, and that is the pivotal area in this case, the finding is supported by the testimony of appellant Joseph Applebaum on cross-examination:

"Q. What percentage of the sales of your shoes to customers in Contra Costa County relates to special orthopedic shoes, would you say? . . . A. I'd say most of it.

"Q. Most of it. You'd say about 90 per cent? A. Yes."

■ Respondent to prove his good faith in the use of his business name introduced letters from various firms in the United States doing business under the name of "Junior Boot Shop." This is objected to as hearsay. On the question of good faith hearsay coming to the knowledge of respondent might well be held competent, but if not the evidence was only cumulative. Appellant Joseph Applebaum himself testified to knowledge of a "Junior Boot Shop," in Seattle, a "Nadeau's Junior Boot Shop," and two children's shoe stores operated under the name "McPhee's Junior Boot Shop," one in Berkeley and the other in San Leandro, California. Even if error, the admission of cumulative evidence of other "Junior Boot Shops" cannot be held prejudicial.

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied November 13, 1957, and appellants' petition for a hearing by the Supreme Court was denied December 11, 1957.