[Civ. No. 17770. First Dist., Div. Two. Apr. 15, 1958.]

MARSALLI'S BLUE RIBBON COFFEE COMPANY, INC. (a Corporation), Plaintiff and Appellant, v. BLUE RIBBON PRODUCTS COMPANY, INC. (a Corporation), Respondent; CHARLES MARSALLI, Cross-defendant and Appellant.

Robert E. Hatch and Leighton Hatch for Appellants.

Raymond J. O'Connor, Charles E. Townsend, Jr., Townsend & Townsend and Stephen S. Townsend for Respondent.

BRAZIL, J. pro tem.*—The respondent is a corporation whose main business is coffee manufacturing and the selling and distribution of high grade coffee to restaurants, hotels and institutions. Its principal office is in San Francisco, and it has branches in Oakland, Santa Rosa, Sacramento, San Jose, Chico and Reno, Nevada. Its general marketing area includes Washington, Oregon, Nevada and California, with the major portion of its business being centered in Northern California. Up until 10 years ago, the company also engaged in retail selling on a house to house delivery plan, but now it has practically no retail trade. Once in a while some one remembers the house to house sales and makes a purchase from a delivery truck. Its coffee products, which make up 90 per cent of its sales, have always been sold under the trade name of Blue Ribbon Coffee.

The appellant Charles Marsalli has for many years operated a well known restaurant under his name, on Kearny Street in San Francisco. For more than five years before he incor-

---

*Assigned by Chairman of Judicial Council.

porated Marsalli's Blue Ribbon Coffee Company, Inc., in March, 1956, he was a regular customer of respondent, buying coffee from that company under the name Blue Ribbon Coffee. Mr. Marsalli testified he had not done business with any other company in the area using or featuring the name Blue Ribbon Coffee, and that he did not know of anyone else who ever used that name in the sale of coffee.

The corporate appellant was organized by Mr. Marsalli for the express purpose of selling coffee to restaurants, hotels and institutions in and about Northern California. The business office of this corporation was the same as that of Marsalli's Restaurant. The officers are Mr. Marsalli, his attorney and the attorney's secretary. No stock has yet been issued or sold, and the corporation has not actually engaged in selling or distributing coffee under the name of Marsalli's Blue Ribbon or any other name. Before the formation of the corporation, Mr. Marsalli attempted to buy stock in respondent corporation, but was unable to make any such purchase or to acquire any interest in Blue Ribbon Products Company, Inc.

The respondent sells coffee in one and five pound packages, either directly or through distributors in the general marketing area. It deals in top-grade coffee for which it commands the highest prices. For a great many years, it has featured the trade name in an extensive advertising campaign. Its average yearly sales of coffee for the last six years has been between one and a half million to two million pounds. The name Blue Ribbon appears on all packages, on leased equipment such as urns and stoves, on its 21 delivery trucks, on calendars, on give away restaurant checks, and it is the name under which the company sponsors cocktail parties and the like for the trade.

Shortly after the incorporation of the appellant company, it filed this action for declaratory relief by which it requested a declaration of its right to the use of the term Blue Ribbon for its prospective sale of coffee. The respondent answered and cross-complained for an injunction to prevent Mr. Marsalli and Marsalli's Blue Ribbon Coffee Company, Inc. from using the expression Blue Ribbon in any manner dealing with the sale of coffee in its general marketing area. From a judgment in favor of defendant and cross-complainant, the plaintiff and cross-defendants have appealed. The appellants were enjoined from transacting business under the name of Marsalli's Blue Ribbon Coffee Company, Inc., from using Blue

Ribbon or Blue Ribbon Coffee in any manner whatsoever in California, Oregon, Washington, Nevada or Arizona, and they are required to destroy all material such as labels, stencils, packages, etc., which incorporated the words Blue Ribbon or Blue Ribbon Coffee. The appellants do not complain of the wide scope of the injunction (e.g., the State of Arizona is not once mentioned in the evidence), but are insistent that they have a right to use the prohibited words in their prospective coffee sales, and that no injunction at all is justified by the facts and the law of this case.

█ Appellants assert that, as there is no conflict in the evidence, only a question of law is presented; that in such a situation the appellate court proceeds anew without being required to give any weight to the decision of the trial court. In support thereof, they cite *Moore* v. *Wood*, 26 Cal.2d 621 [160 P.2d 772]. The situation is not the same for here there was evidence produced by both sides even though it produced practically no factual controversy. In the Moore case, it is said: "The record includes no evidence offered or received for the purpose of showing the intention of the parties as to their agreement, therefore, the construction of the contract by the trial court presents a question of law which this court must determine." *Estate of Norris*, 78 Cal.App.2d 152 [177 P.2d 299], *Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825], and *Moffatt* v. *Tight*, 44 Cal.App.2d 643 [112 P.2d 910], also cited by appellants in support of their contention, hold only that an appellate court is not bound by a construction of a will, contract or document which is based solely on its terms without the aid of evidence. The appellants have evidently overlooked the fact that even with uncontradicted evidence there are inferences to be drawn, interpretations to be made and witnesses to be believed or disbelieved. An appeal of a case, where evidence is received in the trial court, would not become one solely of law just because the appellant refused to cross-examine a witness or call one of his own.

█ The approach to the problems involved must therefore be according to the rule as stated in *Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557], that "an appellate court (1) will review the evidence in the light most favorable to the respondent; (2) will not weigh the evidence; (3) will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact; and (4) will not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof."

■ Appellants claim there is no distinction between this case and *Applebaum* v. *Senior*, 154 Cal.App.2d 371 [316 P.2d 410] (decided by this court in October 1957) and that "Inasmuch as your opinion in Applebaum, *supra,* notes there was no evidentiary conflict, your decision in that case should be applied—without reservation or distinction—to the present one, regardless of the injunction having been denied by the trial court in one instance and granted in the other." The law of the two cases being the same, the results should be alike unless the facts be different. And they are. All of appellants' remaining contentions can be reviewed by a consideration of the differences in the two cases, as well they might by considering the similarities between this case and either *H. Moffat Co.* v. *Koftinow,* 104 Cal.App.2d 560 [232 P.2d 15] or *Del Monte Special Food Co.* v. *California Packing Corp.,* 34 F.2d 774.

In the Applebaum case, the plaintiff sought to enjoin the use of the words Junior Boot Shop, which defendant Senior used in connection with his own name in the conduct of a retail children's shoe store in Walnut Creek. The plaintiff operated two retail children's shoe stores in San Francisco and one in San Anselmo under the name of Junior Boot Shop. He and one Mullany had earlier operated a store of children's shoes in San Francisco under the name Junior Boot Shop with a branch store using the same name in San Mateo County. Mr. Applebaum had bought all the stock in the operating corporation from Mullany and his wife under an agreement by which the Mullanys received the San Mateo store with the right to use the name Junior Boot Shop in San Mateo County. Mr. Senior started his business in 1951 in Walnut Creek and called his store Senior's Junior Boot Shop at the suggestion of his former employer, Mr. Mullany, who thought the paradoxical title would be a catchy name for the store. The plaintiff knew all along that defendant was using this name, and he made no objection until several years later; in fact there were occasions when plaintiff and defendant exchanged shoes when one or the other did not have a particular shoe in stock. It is a reasonable inference from such conduct that even plaintiff did not believe that confusion of the public resulted, or that Mr. Senior was guilty of any unfair business practice.

Here the court found that there was a secondary meaning in the coffee trade to the words Blue Ribbon, while in the Applebaum case the court held that no such meaning in the words Junior Boot Shop had been acquired in Contra Costa

County. The cases are first distinguishable because of the trial court's finding of fact. Mr. Marsalli and his corporation propose to sell their coffee in the same trading areas as that occupied by respondent. The area of appellants' trade would necessarily be embraced within the general marketing area in which respondent's products were well and favorably known under the trade name of Blue Ribbon Coffee. In the other case the court held that there was support in the record for the finding that the term Junior Boot Shop had not acquired a secondary meaning in Contra Costa County in which place respondent's activities were generally confined. The cited case deals with two similar retail businesses (and a third one exists close by in San Mateo County) in different counties, each with limited trading areas. It is quite apparent also that there is essentially a difference between a wholesale or semi-wholesale business and a retail business, for in the latter the personality of the operator of the store has far more significance than is found in the former which necessarily operates in a much larger territory.

While not a deciding factor, the two cases are further distinguished in that there is more than mere coincidence to justify the name Senior's Junior Boot Shop. There appears no good reason for using the words Blue Ribbon in a contemplated competing business operating in the very same area. The English language affords many other apt expressions for the use of appellants in their new enterprise. In the Applebaum case, the respondent was using his own name to make an interesting and appealing combination of words; he was not in direct competition with the appellant; and the court found that his conduct was not an unfair business practice and that it was not likely to cause confusion in the minds of the public dealing with these two business adversaries.

"The question of unfair competition is one of fact for the trial court and depends in the last analysis on whether the public is likely to be deceived [citations] . . . Since the court could properly conclude that the name 'Junior Boot Shop' was not generally identified with plaintiffs' business among the public of Contra Costa County its findings above summarized are supported by the evidence and the inferences properly to be drawn therefrom." (*Applebaum* v. *Senior, supra,* p. 410.)

The same rule applied to this case results in a different conclusion by the trial court, because the findings of fact are not the same. In each case there is substantial evidence to support the finding of fact.

Three witnesses, familiar with the situation, testified that the use of the words Blue Ribbon in the sale and distribution of coffee by the appellants would lead to confusion in the trading area long serviced by the Blue Ribbon Products Co. The appellants did not object to the questions as calling for the conclusion of a witness, move to strike the answers nor cross-examine the witnesses on the subject of their expressed opinions. It is reasonable to assume that these omissions on appellants' part were purposeful and not from oversight. The appellants, while claiming no confusion can arise from the use of a term like Blue Ribbon, which anybody knows relates to something top-grade or to a prize winner, are themselves apparently a bit confused. In their briefs they refer to the respondent as the Blue Ribbon Coffee Co., Inc., instead of Blue Ribbon Products Co., Inc. It is but another indication that Blue Ribbon is the respondent's trade name; that people dealing with coffee believe that Blue Ribbon Coffee is the respondent's product without being much concerned with any other word that may appear in the company's name.

In *H. Moffat Co.* v. *Koftinow, supra,* the court affirmed a judgment enjoining the defendant, who had for several years before operated as the Manteca Veal Co., from using the word Manteca in the sale of meat products, because the word had gotten a secondary meaning as a trade name. Like Blue Ribbon, the word Manteca is not a fanciful expression unrelated to the quality of the product sold. While neither expression could qualify as a trade mark (Bus. & Prof. Code, § 14242, subd. (e)), they can, if the facts warrant, be appropriated as a trade name if a secondary meaning has been acquired. The Moffat case in at least two particulars is less favorable to the prevailing party than the instant case. There the party enjoined was actually in business and had been using the word Manteca in its name, and secondly, Moffat & Co. was alleged to have been guilty of laches in that it waited such a long time after knowledge before it did anything about it.

The fact that appellant intends always to preface the term Blue Ribbon with his own name, Marsalli, does not require a finding that confusion and unfair competition is thereby eliminated. "It is obvious that the requirement that subject matter be added to the words in question to the effect that there was no connection between the two businesses would be ineffective. It would be fraught with the practical danger of

abuse in the many and varied ways that the words are used in a business such as advertising, answering telephone calls and the like.'' (*Eastern Columbia, Inc.* v. *Waldman,* 30 Cal.2d 268, 271 [181 P.2d 865].)

In this case we find the appellants, having bought coffee under the name of Blue Ribbon from respondent for many years, trying unsuccessfully to buy into the respondent company, having never heard of anybody other than respondent using the term in the coffee business and who must certainly have known of respondent's reputation for high quality coffee, suddenly deciding to go into direct competition with the respondent and using the very two words that respondent had for more than forty years used to favorably identify its product. The choice of these two words must surely be attributable to something more than sheer coincidence. Under the circumstances it is difficult to find any justification for permitting appellants to use those words at all in their proposed business whether alone or in conjunction with other words.

While injunction may in many cases be an extraordinary remedy, to be issued with great caution and only on a clear showing (*Wilkins* v. *Oken,* 157 Cal.App.2d 603, 606 [321 P.2d 876]), the admonition is scarcely applicable here for the appellants have not as yet started business; the respondent asks for no damages—all it asks is for the court to prevent the use of just two words. This leaves appellants with a myriad choice of words, equally as effective as the two they want to use, except perhaps for the unjustified purpose of confusing the public, the coffee trade or the respondent's customers. It is unlikely that appellants would be so insistent if respondent had over the years somehow created an impression in the coffee trade that Blue Ribbon stood for poor rather than good quality.

''This thought that a newcomer has an 'infinity' of other names to choose from without infringing upon a senior appropriation runs through the decisions.'' (*Stork Restaurant* v. *Sahati,* 166 F.2d 348, 361.)

For an elaborate discussion of about every contention an appellant can make to upset a injunction preventing the use of a trade name, reference is made to the case last cited.

Judgment affirmed.

Dooling, Acting P. J., and Draper, J., concurred.