**Sumner DARMAN, Trustee, Sentron, Inc., Plaintiff-Appellee,**

v.

**METROPOLITAN ALARM CORP., Defendant-Appellant.**

**No. 75–1398.**

United States Court of Appeals, First Circuit.

Argued Jan. 7, 1976.

Decided Jan. 23, 1976.

---

Milton B. Goodman, Boston, Mass., for appellant.

Terry Philip Segal, Boston, Mass., for appellee.

June Hawker Gorman, Boston, Mass., on brief for New England Telephone and Telegraph Co., amicus curiae.

Before CAMPBELL, Circuit Judge, and MURRAY and FREEDMAN, District Judges.[*]

LEVIN H. CAMPBELL, Circuit Judge.

Metropolitan Alarm Corp., (Metropolitan) appeals from an order of confirmation of sale entered by the bankruptcy judge and confirmed by the district court. The order authorizes the bank-

---

[*] Sitting by designation.

rupt, Sentron, Inc., to sell and convey to a third party all benefits of its telephone advertising and listings and its right to use telephone numbers 623–3200 and 623–8386 (apparently listed in the directory under its trade name Sonaguard).

Metropolitan's complaint stems from the fact that from August 26, 1974, to February 18, 1975, while Sentron was in Chapter XI receivership, Metropolitan managed Sentron's business under a contract with Sentron's receiver, and during this period used and paid bills for the telephone numbers at issue, and would now like to continue using them. However, after February 18, 1975, Sentron having been adjudicated bankrupt, the management contract terminated and the bankrupt was permitted by the bankruptcy court to make the sale at issue, with the approval and acquiescence of the provider of telephone service, New England Telephone Company.

In its brief Metropolitan challenged the "jurisdiction" of the bankruptcy court to order the telephone numbers transferred from Metropolitan's control to another. However, at the hearing, Metropolitan indicated that it was not contesting jurisdiction but rather was asserting that the bankruptcy court had erred.

■ On the latter issue, however, nothing was presented to indicate error in the court's disposition as between the bankrupt and Metropolitan. The bankruptcy judge's findings are entitled to stand unless shown to be clearly erroneous. Bankr. R. 810. The judge found that Metropolitan's right to use the numbers had been incidental to the management contract, and that the contract was terminated "by February 18, 1975, and certainly no later than March 20, 1975." The judge held, we think properly, that

Metropolitan was without legal right to use the numbers thereafter.

■ The jurisdictional argument is likewise without merit, even assuming appellant has not abandoned it. Metropolitan has contended that, as a mere subscriber, the bankrupt could have no proprietary interest in the numbers (citing the telephone company tariff), so that once in the hands of Metropolitan, they were out of the bankrupt's control and beyond the reach of the bankruptcy court. However, while a subscriber's interest in numbers is undoubtedly subject to the paramount rights of the telephone company, the subscriber plainly holds a right of user superior to others. Here, the Chapter XI receiver's transfer of rights in the numbers to Metropolitan was merely incidental to the management contract; and the transfer could not survive termination of that contract. Thereafter, Sentron's rights, such as they were, reverted to it. Metropolitan's continuing access to equipment utilizing the numbers did not create an adverse claim of any substance. We do not think Metropolitan's claim was of sufficient substance to deprive the bankruptcy court of summary jurisdiction over the numbers. *See* 2 Collier's on Bankruptcy ¶ 23.05 (14th ed. 1975).

■ Moreover, the argument that Sentron's interest was nonetheless too attenuated for bankruptcy court jurisdiction is undercut by the fact that New England Telephone Company, a party to the proceedings below, entered into a stipulation with the trustee in bankruptcy expressly agreeing that the trustee could transfer all benefits of the advertising and listings and the use of the numbers to the third party in question.[1] Even if we were to assume that the bankrupt's title, being that of a mere subscriber, was inadequate, standing alone, to confer summary jurisdiction to

---

1. The wording of the stipulation and final order, as well as the telephone company's *amicus* brief herein, carefully maintain a distinction of importance to the telephone company between a subscriber's rights derived from a contract for telephone service and a subscriber's possible claim to a possessory interest in the telephone number (which latter type interest the company declines to acknowledge).

enter the order,[2] any such possible infirmity would seem cured on these facts by the consent of the party having paramount ownership of the service.

*Affirmed.*

---

**2.** There appears to be a conflict of authority on whether in the absence of telephone company consent a bankrupt subscriber has an interest such as to give the bankruptcy court summary jurisdiction. *In re Fontainebleau Hotel Corp.*, 508 F.2d 1056 (5th Cir. 1975); *In re Best Re-Manufacturing Co.*, 453 F.2d 848 (9th Cir. 1971), *cert. denied*, 406 U.S. 919, 92 S.Ct. 1771, 32 L.Ed.2d 118 (1972); *Slenderella Systems of Berkeley v. Pacific T. & T. Co.*, 286 F.2d 488 (2d Cir. 1961). However, as the telephone company has acquiesced in the bankruptcy court's order, we need not rule on that question.