[No. A018982. First Dist., Div. One. Nov. 28, 1984.]

CYTANOVICH READING CENTER, Plaintiff and Appellant, v. READING GAME, Defendant and Respondent.

**COUNSEL**

John P. Sutton, Christopher G. Hawkins and Limbach, Limbach & Sutton for Plaintiff and Appellant.

John B. Gunn and Thomas H. Crawford for Defendant and Respondent.

## Opinion

**HOLMDAHL, J.**—Plaintiff appeals from judgment rendered in defendant's favor on its complaint for trademark infringement and unfair competition.

The judgment is affirmed.

### *Statement of Facts*

This is an action between plaintiff and appellant Cytanovich Reading Center (hereafter, Cytanovich) and defendant and respondent The Reading Game, a California corporation. Appellant is a sole proprietorship, owned by Kathryn Cytanovich.

The facts can be summarized as follows: Both Cytanovich and The Reading Game provide reading improvement services. Cytanovich has provided such services in Palo Alto since 1971. Unlike The Reading Game, Cytanovich employs a method for which it has received a patent from the United States Patent Office.

The Reading Game has been in business since 1969. Unlike Cytanovich, The Reading Game has locations in several places, but did not have a reading center in northern California until 1980, when it opened a center in Palo Alto, a few blocks from Cytanovich.

Since 1975, Cytanovich has used as its business telephone number "321-7323" and has represented it alphanumerically as "321-READ." Cytanovich has used "321-READ" as a mnemonic device and as a symbol in its advertising for several years.

The evidence shows that prior to opening the Palo Alto location, The Reading Game had never used a telephone number incorporating the symbol "READ." The evidence also shows that The Reading Game had obtained Cytanovich's brochure, which did display its telephone number in the alphanumeric form "321-READ," prior to opening its Palo Alto center. When it opened its Palo Alto center, The Reading Game began using in its advertising the telephone number "494-7323" expressed alphanumerically as "494-READ."

Cytanovich, through its attorney, demanded that The Reading Game cease using what Cytanovich termed its "trademark," i.e., "READ." When The Reading Game refused, Cytanovich filed this suit.

## Procedural History

Cytanovich filed a complaint, on November 6, 1980, seeking treble actual (according to proof) and punitive damages and injunctive relief. The complaint was framed in two counts: Trademark infringement and unfair competition. Both causes arise from the same set of facts, having to do with The Reading Game's use of a telephone style similar to that of Cytanovich.

Subsequent to Cytanovich's obtaining a preliminary injunction restraining The Reading Game from using the subject telephone number in the Bay Area, the case was tried in Santa Clara County Superior Court. Thereafter, the court filed its tentative decision. No findings of fact or conclusions of law were requested. On June 1, 1982, the court issued its judgment in favor of The Reading Game and dissolving the preliminary injunction. Cytanovich timely filed its notice of appeal.

## Issues

Cytanovich contends that the symbol "321-READ" is a trademark or service mark entitled to protection and that the acts of The Reading Game, in addition to constituting an infringement of its mark, constitute unfair competition. The Reading Game contends that the word "read" is not subject to exclusive appropriation because it is in common usage, is descriptive of services offered, and has not acquired a secondary meaning: i.e., "321-READ" or "READ" is not entitled to protection as a trademark or tradename. The Reading Game also contends that Cytanovich acquired no exclusive right to the use of "321-READ" by virtue of registering the symbol[1] after hearing of The Reading Game's use of "494-READ."

As to damages, Cytanovich contends it should be entitled to actual damages of $20,875.39 and exemplary damages of $125,252.34, for a total of $146,127.73 for damages attributable to pretrial advertising, plus damages for similar advertising after trial.

### "321-READ" or Suffix "READ" as a Trademark or Service Mark

A trademark is "any word, name, symbol, or device or any combination thereof adopted and used by a person to identify goods made or sold by him

---

[1]The mark was registered with the California Secretary of State on October 29, 1980.

and to distinguish them from goods made or sold by others." (Bus. & Prof. Code, § 14207.) A service mark is "a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others." (Bus. & Prof. Code, § 14206.)

Although the foregoing suggests that a difference between trademarks and service marks is that the former are affixed to goods while the latter are associated with services, it appears the law contemplates the use of trademarks in connection with services, as well. Thus, Business and Professions Code section 14209 provides in part that "a trademark shall be deemed to be 'used' in this state . . . on services when it is used or displayed in the sale or *advertising* of services and the services are rendered in this state." (Italics added.)

■ What cannot be used as marks are words or phrases in common use (*Purity Springs W. Co.* v. *Redwood Ice Dlvy.* (1928) 203 Cal. 286, 291 [263 P. 810]; *Applebaum* v. *Senior* (1957) 154 Cal.App.2d 371, 374 [316 P.2d 410]) or which are descriptive of the goods or services (see Bus. & Prof. Code, § 14220, subd. (e)(1)).

Any person who adopts and uses a trademark or service mark in California may register the mark with the Secretary of State (Bus. & Prof. Code, § 14230). A certificate of registration issued by the Secretary of State is prima facie evidence of ownership of the mark. (Bus. & Prof. Code, § 14241.)

As The Reading Game points out, Business and Professions Code section 14230 is intended to apply when that which is being registered is, in fact, a trademark or service mark. If "321-READ" or the suffix "READ" is not a mark which can be protected to begin with, the fact Cytanovich obtained a certificate of registration adds nothing towards resolution of the issue before this court.

The central question, then, is whether "321-READ" or "READ" is a mark entitled to protection. The Reading Game contends it is not, because "READ" is descriptive of the services offered and is a word in common use which has acquired no secondary meaning entitling Cytanovich to appropriate it for exclusive use. Cytanovich contends that "READ" is a service mark used in the sale or advertising of its reading improvement services, which mark identifies it as the source of those services. In response to The Reading Game's assertion that "READ" was simply a device to identify Cytanovich's telephone number rather than to identify the source of the services, it states that "[t]he telephone number is the means to reach the source of the services."

As to the contention that "READ" is a descriptive word (and hence not protectable), Cytanovich says: "The word 'READ' is a transitive *verb,* as in 'Jane reads a book.' There is no such thing as a 'read,' or a 'junior read.' The descriptiveness argument is nonsense." (Original italics.)

Cytanovich further argues that "READ" has been adopted by both parties because (evidently through its use of the term since 1975) "READ" has acquired a secondary meaning: It indicates the source (or at least the telephone number of the source) of reading improvement services.

No appellate case dealing with situations such as that present in the instant case has been cited to us, and we have found none holding that a particular telephone number or suffix or a method of representing a telephone number either can or cannot constitute a trademark or service mark.

Due to the common use of the word "read" in virtually all contexts and due to the lack of authority holding its use as a telephone number creates a special right, we conclude that neither the number itself nor suffix method, nor Cytanovich's use of same, can be deemed to constitute a trademark or service mark.

### Use of "494-READ" as Unfair Competition

There are several reported cases pertaining to claims of proprietary interests in or rights to use particular telephone numbers. For example, in *Darman* v. *Metropolitan Alarm Corp.* (1st Cir. 1976) 528 F.2d 908 the court held that a subscriber could have a proprietary interest in a telephone number, subject to the paramount rights of the telephone company. The decision seems to rest on principles of contract law, rather than on unfair competition, and is not helpful here.

There are other out-of-state appellate cases involving use of telephone numbers as being unfair competition, but no reported case deals with the type of situation presented here.[2]

---

[2]The closest factual similarity is with *Chicago World's Fair—1992 Corporation* v. *The 1992 Chicago Worlds' [sic] Fair Commission, et al.* (N.D.Ill. Aug. 16, 1983) Civ. No. 83 C 3424 [unpub. opn.], in which that United States District Court issued a preliminary injunction in a suit charging trademark infringement and for unlawful competition.

From the order granting a preliminary injunction, the following facts appear: Plaintiff Chicago World's Fair—1992 Corporation is an official group associated with the 1992 Chicago World's Fair. Plaintiff has registered several trademarks and tradenames. In addition, it has adopted, used, and publicized the telephone number "444-1992," the last four digits of which are symbolically significant.

Defendant, The 1992 Chicago Worlds' [sic] Fair Commission, appears to be a commercial enterprise with no official connection with the World's Fair. It has adopted several names

■ Quite separate from the telephone number nature of the case before us, however, we note that as a general proposition, unfair competition can exist in cases in which there exists no infringement of trademarks. Thus, "[¶] Where no valid trademark, copyright or patent exists in a particular name or design, one producer may freely copy the goods of another or use the same business name if no deception is involved. But if the goods or services are known to the public by such name, design or physical appearance, *any imitation which has the effect of deceiving buyers as to the origin of the goods or services may be enjoined as unfair competition.*" (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 73, p. 5294, italics added.)

The cases involving allegedly deceptive use of marks or names demonstrate the importance of a close examination of the facts of each individual case. In *Purity Springs W. Co.* v. *Redwood Ice Dlvy., supra,* 203 Cal. 286, plaintiff sued to restrain Redwood Ice Delivery's use of the name "PURITAN WATER" on its water bottles. The court noted that "water" is a name in common use and cannot be exclusively appropriated, but the decision to deny injunctive relief seems to be based on the court's determination that the design of the labels was so different the potential for confusion did not exist. Oddly enough, the court made no mention of the similarity between the words "Purity" and "Puritan."

In *Applebaum* v. *Senior, supra,* 154 Cal.App.2d 371, this court held that the name "Junior Boot Shop," as applied to a shoe store, was not subject to exclusive appropriation because the words were descriptive: They were simply another way of saying "Children's Shoe Store." But in *Rosenthal* v. *Brasley-Krieger S. Co.* (1937) 19 Cal.App.2d 257 [64 P.2d 1109], the Third District held that plaintiff, owner of "Rosenthal's Family Shoe Store," could obtain injunctive relief against a competitor's use of the name "Kirby's Family Shoe Store." *Applebaum* and *Rosenthal* are difficult to reconcile on the surface, but examination of the details of each case shows that in *Applebaum,* unlike *Rosenthal,* there was very little, if any, actual competition between the parties and little, if any, chance of confusion.

---

resembling those registered by plaintiff. In addition, it has adopted and used the telephone number "434-1992."

The district court noted the similarity of names and by preliminary injunction ordered defendant to cease using *deceptively similar* names on the basis that such use appeared to infringe on plaintiff's rights. The injunction also ordered defendant to cease using the telephone number "434-1992" and to obtain another number not similar to that of plaintiff.

The case is not an appellate opinion and is unpublished. We do not cite it as authority, but refer to it, academically, because of the sparsity of precedent and the likely recurrence of litigation on the subject.

Turning to the instant case, we note that the parties share substantially the same geographical service area.[3] Where the parties' service areas are largely coterminous there is, of course, likely to be actual competition and a substantial risk of misleading or, at least, confusing the public. The Reading Game argues that since the prefix must be dialed in order to complete a telephone call, one is not likely to telephone the wrong reading clinic simply because both have numbers ending in the last four digits. However, given the alphanumeric method by which both parties depicted their telephone numbers, a consumer might very well assume some connection between the two entities because of the similar use of "READ."

For example, a person who has been told good things about Cytanovich's abilities or seen its advertisements or literature depicting its telephone number as "321-READ" may be favorably impressed and resolve later to call for an appointment. Thereafter, that person sees an advertisement for The Reading Game. So reminded, he dials The Reading Game's number, thinking that the number and the advertisement in which it appeared are associated with Cytanovich because of the use of "READ," the only part of its identification that he remembers when he calls.

The record contains evidence that use of a deceptively similar telephone number can confuse potential customers as to the source of services in which they are interested. █ We conclude that the use of such telephone numbers *may* provide the basis for a claim of unfair competition, at least under circumstances similar to those suggested in the present case. Basic and essential to such a determination by a trial court that the conduct complained about constitutes unfair competition are its factual findings and conclusions as to material considerations such as these: Whether there is some imitation of the telephone number associated with a particular service; whether the telephone number represents a somewhat novel or distinctive use; whether the telephone number imitated has received some significant prior use; whether a largely coterminous or at least competitive service area is involved; whether there is a likelihood that the ordinary public will be deceived; and, if the alphanumeric representation is generic or descriptive, whether it has acquired a secondary meaning such that a substantial segment of the purchasing public associates the symbol with the original, single source of a given service.

Here, although Cytanovich did sue for unfair competition, as well as for trademark infringement, the trial court's tentative decision focuses entirely

---

[3]The Reading Game's total service area, of course, is much larger than that of Cytanovich. The service area of Cytanovich, however, is largely enveloped by a small portion of that of the Reading Game.

on the reasons why the trial judge disallowed the trademark infringement claim.[4] Cytanovich, however, did not request a formal statement of decision pursuant to Code of Civil Procedure section 632. Thus, even if we were to treat the tentative decision as the functional equivalent of a statement of decision, the record does not indicate that Cytanovich brought to the attention of the trial court any omission or ambiguity. (Code Civ. Proc., § 634.)

■ And, in the absence of findings of fact, "an appellate court must presume that the facts would support the trial court's judgment." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 645 [183 Cal.Rptr. 508, 640 P.2d 179].) When there is conflicting evidence, "it will be presumed that the [trial] court found every fact necessary to support its [judgment] that the evidence would justify." (*Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501, 507-508 [289 P.2d 476].) Accordingly, we are precluded from definitively acting on the basic unfair competition question raised on appeal and must assume that the factual issues which pertain to that cause of action were appropriately raised and were properly resolved in favor of The Reading Game.

The judgment is affirmed.

Elkington, J., concurred.

**RACANELLI, P. J.,** Concurring.—I join in the reasoning and result relating to the trademark/service mark issue only; as to the unfair competition issue, fundamental principles of review dictate that we consider conflicting evidence favorable to the prevailing party (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 245-247, pp. 4236-4240) and, in the absence of requested findings, presume facts upholding the judgment. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 645 [183 Cal.Rptr. 508, 646 P.2d 179].)

Appellant's petition for a hearing by the Supreme Court was denied January 24, 1985. Bird, C. J., was of the opinion that the petition should be granted.

---

[4]Some of the content of the tentative decision arguably could apply to resolution of the issue of unfair competition. For example: "[P]laintiff has failed to demonstrate that this mnemonic has acquired a secondary meaning."