CENTRAL CONTROLS COMPANY, INC., Plaintiff-Appellant,

v.

AT & T INFORMATION SYSTEMS, INC., Defendant-Respondent.

No. 52656.

Missouri Court of Appeals, Eastern District, Division Two.

March 8, 1988.

Leritz, Reinert & Duree, John L. Sullivan, Joyce E. York, St. Louis, for plaintiff-appellant.

Coburn, Croft & Putzell, Louis Francis Bonacorsi, Ketrina G. Bakewell, St. Louis, for defendant-respondent.

PUDLOWSKI, Judge.

The appellant, Central Controls Company, Inc. ("Central") appeals the entry of

summary judgment in favor of respondent, AT & T Information Systems, Inc. ("AT & T–IS") on the issue of liability on an equipment lease contract.

This conflict is a result of the divestiture and reorganization of AT & T which took place in January of 1984. Prior to 1984, the local subsidiary operating companies of American Telephone and Telegraph Company ("AT & T"), including Southwestern Bell Telephone Company ("SWBT"), routinely leased telecommunications equipment for installation on customers' premises. For business customers, the equipment was referred to as customer premises equipment ("CPE") and was leased under either a month-to-month arrangement or a contract for a fixed lease term. Fixed term contracts typically contained monthly charges that were significantly less than those in month-to-month arrangements. However, the contract provided for early termination charges to offset the "lost revenue stream" and to avoid discrimination against month-to-month customers, who paid higher monthly rates but enjoyed the flexibility of terminating their leases at will.

On March 24, 1982 Central entered into a fixed term contract with Southwestern Bell Telephone Company ("SWBT") for the installation of a Horizon System (a telephone equipment system). The contract provided in pertinent part:

[T]he fixed monthly rate is to be paid for a period of 60 months. Fixed rates are not subject to change by the telephone company during the Fixed Rate Term, *but remain subject to the regulation of the Missouri Public Service Commission*. The variable monthly rates are payable for as long as equipment is retained. The variable monthly rate is subject to regulatory change. In the event of discontinuance of service by action of the customer prior to the expiration of the Fixed Rate period, the amount to be billed will be the present worth of the unexpired portion of the Fixed Rate term.

. . . .

It is understood that the effective tariffs of Southwestern Bell represent the binding agreement between the parties, and that all services and equipment provided are subject to conditions expressed in those tariffs and to the regulation of the *Mo. Public Service Commission*. . . .

The monthly rental charge under the agreement consisted of two components. The Trier A charge, set in 1982, was not subject to change by SWBT but remained subject to regulation by the Missouri Public Service Commission. The Tier B charge was subject to change during the fixed term of the lease. These variable rates were subject to regulatory change upon application of SWBT to the Missouri Public Service Commission and were payable monthly for as long as the equipment was retained. The Horizon System was installed on Central's premises on May 24, 1982. Central used the equipment and paid the monthly lease charges assessed by SWBT under the equipment lease contract.

During the term of Central's lease, the United States District Court for the District of Columbia entered a Modification of Final Judgment which required AT & T to divest itself of certain operations and companies, including its Bell Operating Companies, and required the Bell Operating Companies to assign to AT & T Information Systems ("AT & T–IS"), an unregulated subsidiary established for this purpose, "all facilities, personnel and books of account . . . relating . . . to the provision of customer premises equipment to the public." *United States v. American Telephone and Telegraph Co.*, 552 F.Supp. 131, 227 (D.D.C.1982), *aff'd sub nom Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983).

The divestiture and reorganization required by the Modification of Final Judgment was implemented by AT & T and its related companies on January 1, 1984. On that same date all embedded CPE became detariffed. Pursuant to the divestiture order SWBT assigned ownership of the CPE on Central's premises and its interest in the lease to AT & T–IS on January 1, 1984. Thereafter Central made payments to SWBT on behalf of AT & T–IS for the use of the CPE.

On June 11, 1984 Central sent a letter to SWBT and AT & T–IS in which it expressed dissatisfaction with the operation of the CPE and with the fact that AT & T–IS and not SWBT was providing service pursuant to court ordered divestiture. Central requested that the CPE be removed from the premises and service be terminated effective July 9, 1984. During that month the CPE was removed and Central was assessed termination charges in the amount of $10,001.44 which it failed to pay. Shortly thereafter, Central filed an action for declaratory judgment against SWBT and AT & T–IS. Count I of Central's petition sought to have its obligation under the contract terminated on the ground that continued performance under the contract was impossible due to the detariffing of CPE. Count II sought the return of payments made to SWBT on the ground that the equipment did not provide the services represented at the time the contract was entered into. AT & T–IS filed an answer and counterclaim for payments due under the lease. On April 24, 1986 Central voluntarily dismissed SWBT from the case.

On June 6, 1986 AT & T–IS moved for summary judgment on Counts I and II of plaintiff's petition and on its counterclaim. Hearing on the motion was set for September 26, 1986. The entry on the judge's docket sheet for September 22, 1986 reads: "Memorandum in Support of Defendant's motion for summary judgment filed (Exhibits in file)." One of the exhibits attached to the memorandum was the affidavit of R. Victor Bernstein. That affidavit reads:

R. VICTOR BERNSTEIN, being duly sworn upon his oath according to law, deposes and states:

1. I am an Assistant Secretary of American Telephone and Telegraph Company and have held this position since April, 1983. My office address is 550 Madison Avenue, New York, New York.

2. Attached hereto as Exhibit A is a true and accurate copy of a Bill of Conveyance dated, December 12, 1983, conveying detariffed Customer Premises Equipment to AT & T Information Systems Inc.

3. Attached hereto as Exhibit B is a true and accurate copy of portions of the Reorganization and Divestiture Agreement Among American Telephone and Telegraph Company and Southwestern Bell Corporation and Affiliates.

---

### R. Victor Bernstein

On the day of the hearing AT & T–IS filed the affidavits of Mary Tisius, the AT & T accounts manager and Marjorie Patrick, a service representative of SWBT. A careful search of the record reveals no effort on Central's part to respond to AT & T–IS's motion either by counter affidavit, verified denial or objection. Central apparently chose to rest on its pleadings.

The motion was heard and submitted on September 26, 1986 and summary judgment was entered in favor of AT & T–IS as to Count I of Central's petition on September 29th. AT & T–IS's motion as to Count II was denied and Central was granted leave to amend the petition as to Count II by adding SWBT as a necessary party. Central did not do so. Trial was held on AT & T–IS's counterclaim on November 17, 1987 and judgment was entered in favor of AT & T–IS in the amount of $10,001.44 on November 24, 1987. Count II of Central's petition was dismissed. At oral argument Central advised this court that Count II was abandoned. Central's motion for new judgment or in the alternative for a new trial was denied and this appeal followed.

A summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions in file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Rule 74.04(c). A summary judgment is not appropriate unless the movant shows by "unassailable proof" to be entitled to a judgment as a matter of law. Rule 74.04(b). In determining whether the movant, here AT & T–IS, met its burden the court must scrutinize the record in the light most favorable to the party opposing the motion, in this case Central, and afford that party the benefit of every reasonable

doubt. *Sturgeon v. State Bank of Fisk,* 616 S.W.2d 578, 582 (Mo.App.1981). If, as a matter of law, the judgment is sustainable on any theory, it must be affirmed. *McCready v. Southard,* 671 S.W.2d 385, 387 (Mo.App.1984).

In its first point Central argues that the affidavits, pleadings and depositions submitted by the court were insufficient to foreclose the presence of any material issue of fact and therefore entry of summary judgment in favor of AT & T-IS was inappropriate. In particular, Central argues that the affidavits offered by AT & T-IS in support of its motion were defective in three ways. First, the affidavit of R. Victor Bernstein does not show on its face that he had personal knowledge of the exhibits as to their custody, preparation, execution authority, delivery or any other fact relating to their validity. Second, the exhibits referred to in the copy of the affidavit were not attached. Third, the affidavit of Mary Tisius and Marjorie Patrick were filed on the day of the hearing, thus, were untimely and could not have been considered by the trial court in its ruling.

▮ The record does not show that Central at any time moved to strike these affidavits or in any way objected to their consideration on the grounds it now asserts. *Sturgeon,* 616 S.W.2d at 586. Since Central was on notice that these affidavits were offered for consideration and did nothing to bring these purported defects to the attention of the trial court, it cannot now charge that the trial court erred in considering these affidavits.

▮ Central also asserts that the trial court erred in granting summary judgment in that none of the SWBT tariffs, which were an essential part of the contract between the parties, were presented to the trial court via pleadings, affidavits or deposition. AT & T-IS in response argues that the tariffs are a matter of public record and are amenable to judicial notice. We agree.

On the date the contract was entered into every telephone corporation was required to file the rate schedules with the Missouri Public Service Commission. These sched-ules were required to be plainly printed and kept open to public inspection. Section 392.220.1, RSMo (1978); 4 CSR 240–30.010. When these rates, or tariffs, were filed pursuant to the above requirement, they became part of the law. *Warner v. Southwestern Bell Telephone Co.,* 428 S.W.2d 596, 601 (Mo.1968). The trial court may take judicial notice of the laws of this state. *Sperry Corp. v. State Tax Comm'n,* 695 S.W.2d 464, 469 (Mo. banc 1985). We find no error.

In its second point Central argues that the trial court erred in finding Central liable under the contract in that as of January 1, 1984 the contract was unenforceable. In support of its conclusion Central reasons that since the tariffs were "the essential and controlling portion of the contract," when they were eliminated as of January 1, 1984 by judicial decision the contract became a nullity. As a result, as of January 1, 1984, there was no contract to assign to AT & T-IS by SWBT. There being no contract, AT & T-IS was unable to voluntarily honor the terms of the SWBT contract, and therefore Central is relieved from its obligation. This argument is creative but unpersuasive.

▮ The FCC has found that its actions in detariffing CPE does not provide a legal justification for customers such as Central to avoid their obligations under existing CPE agreements. In Re Procedures for Implementing the Detariffing of Customer Premises Equipment and Enhanced Services (Second Computer Injury), 100 FCC2d 1298 (1985). The argument that Central puts forth has been attempted and has failed in other jurisdictions. *See AT & T-IS v. South Carolina Federal Savings Bank,* No. 3:86–2819–0 (D.S.C. Oct 5, 1987); *AT & T Information Systems, Inc. v. The Kerrison Dry Goods Co., Inc.,* No. 2:86–1305–1 (D.S.C. Aug. 20, 1987); *AT & T Information Systems, Inc. v. Holiday Health Clubs of the Southeast, Inc.,* No. 86–CP–04–83–34 (Ct. C.P. Anderson County S.C. Jan. 23, 1987); *AT & T Information Systems, Inc. v. CSI Associates d/b/a Holiday Inn Downtown,* No. X85–1808–C (Super. Ct. Chatam County Ga. Sept. 2,

1986). We find that the detariffing of CPE did not render the contract void and did not relieve Central of its obligation under the contract.

In that same point Central argues that the detariffing of CPE made performance under the contract impossible. If a party, by his contract obligates himself to a performance which is possible to be performed, he must make good unless his performance is rendered impossible by a Act of God, the law, or the other party. *Howard v. Nicholson*, 556 S.W.2d 477, 481 (Mo.App.1977). A change in the law which does not make the performance of a contract illegal does not provide a justification for not performing a contract. Under these circumstances detariffing did not render further performance under the contract illegal and therefore Central's argument must fail.

This argument is further refuted by the conduct of the parties. After the January 1 detariffing of CPE, Central utilized the same telephone equipment, service and rates that it had accepted from SWBT prior to the detariffing. For seven months, Central continued to make payments. Central's continued performance after the detariffing negates the defense of impossibility. A party who accepts benefits under the terms of a contract is estopped to question the existence, validity and effect of that contract. *Long v. Huffman*, 557 S.W. 2d 911, 915 (Mo.App.1977). Point denied. The judgment of the trial court is affirmed.

STEPHAN, P.J.; SATZ, C.J., concur.