**CLIPPER CRUISE LINE, INC., Appellee,**

v.

**STAR CLIPPERS, INC., Appellant.**

**No. 91–3298.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1991.

Decided Jan. 3, 1992.

Thomas Wack, St. Louis, Mo., argued (Terrance O'Toole, on the brief), for appellant.

Mark Packer, St. Louis, Mo., argued, for appellee.

Before LAY, Chief Judge, and WOLLMAN and HANSEN, Circuit Judges.

LAY, Chief Judge.

Clipper Cruise Line (CCL) brought this action, filed February 2, 1990, seeking relief under the Lanham Act, 15 U.S.C. §§ 1051–1072, 1091–1096, 1111–1121, 1123–1127 (1988). CCL has registered its name as a service mark, and claims infringement on the grounds of false designation of origin, and unfair competition by the appropriation of its registered service mark under section 45 of the Trademark Law Revision Act of 1988.[1] Star Clippers, Inc. filed this appeal from the district court's issuance of a preliminary injunction prohibiting Star Clippers from using the term "Clipper" in its business name and in the names of its ships.[2] The district court adopted the magistrate's recommendation that a preliminary injunction should issue, upon finding, inter alia, that the word "Clipper" was a descriptive term entitled to trademark protection. We must respectfully disagree and vacate the issuance of the preliminary injunction.

CCL, founded in 1982 as an upscale cruise service, specializes in Carribean cruises aboard small motorized yachts. In 1983, CCL registered the service mark "Clipper Cruise Line" with the United States Patent and Trademark Office. The description of the mark is for "Travel Services—namely, arranging cruises on oceans, rivers, and other waterways ...." In addition, CCL has registered the names of its boats: the Newport Clipper, the Nantucket Clipper, and the Yorktown Clipper. Star Clippers was incorporated in 1989 by European nationals interested in entering the Carribean cruise market. Star Clippers asserts that it chose the term "Clipper" to capitalize on the resemblance its ships bear to the American clipper ships designed in the latter half of the nineteenth century.

■ A term for which trademark protection is sought must be categorized as either (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. *Cellular Sales, Inc. v. Mackay*, 942 F.2d 483, 485 (8th Cir.1991); *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1325 (8th Cir.1984). While terms which fall into the fourth category are entitled to the strongest possible protection, those deemed generic are precluded from trademark protection under any circumstances. *See General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978); *see also Cellular Sales*, 942 F.2d at 486 (generic words are "not entitled to trademark protection because such words are in 'the public domain and available for all to use'....") (citation omitted). *See generally* 3 Callmann, *The Law of Unfair Competition, Trademarks and Monopolies* § 19.29.50 (4th ed. 1983) (doctrine of trademark incapacity).

We have recognized that "[a] mark is designated as generic in recognition of its role in consumer minds as the common descriptive name for a type, genus or class of goods ...." *General Mills*, 824 F.2d at 625. Even where a company has invested large sums of money or has achieved great success in securing public identification with its use of a particular term, it nevertheless "cannot deprive others of the right to call a product or service by its generic title." *WSM*, 724 F.2d at 1327; *see also Miller*, 561 F.2d at 80 ("otherwise 'a competitor could not describe his goods as what they are.'") (citation omitted); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976).

---

**1.** Under section 45 of the Trademark Law Revision Act of 1988, "the term 'service mark' means any word, name, symbol, or device, or any combination thereof— ... [used] to identify and distinguish the services of one person ... from the services of others and to indicate the source of the services...." 15 U.S.C. § 1127 (1988).

**2.** The district court stayed the issuance of the preliminary injunction for 90 days during pendency of an expedited appeal.

When an otherwise generic name is used to connote other than a common meaning, and is not intended to be descriptive of its product or function, it may well be registerable as a mark under the Lanham Act. The lines of demarcation between the four trademark categories are often blurred, and "the difficulties are compounded because a term that is in one category for a particular product may be in quite a different one for another ...." *Abercrombie & Fitch*, 537 F.2d at 9; *see also A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 906 (7th Cir.1986) ("[a] term that is generic for one particular product may be arbitrary for another ...."). In *Abercrombie & Fitch*, the Second Circuit held the use of the word "safari" for items of hunting-type clothing to be generic.[3] Writing for the court, Judge Friendly offered the example of "ivory," which was generic with regard to products made from the tusks of elephants, but arbitrary when applied to soap. *Abercrombie & Fitch*, 537 F.2d at 9 n. 6; *see also In re Seats, Inc.*, 757 F.2d 274 (Fed.Cir.1985) (while ordinarily a generic name, seller of reservations at entertainment and sporting events may register "seats" as a service mark). However, such registration should not be used to prevent uses by others of the generic term describing the actual services or the product. *See id.; Cellular Sales, Inc. v. MacKay*, 942 F.2d 483 (8th Cir.1991). This is the precise situation presented here.

The magistrate found that since the plaintiff CCL was not selling clipper ships, but was engaged in cruise services, use of the word "Clipper" in its mark cannot be categorized as generic. This may or may not be true. This is not the issue before us. CCL does not use the term to describe its company's services, because its services involve cruises on shallow draft motor vessels. Star Clippers, however, is using the word in order to communicate that it is offering the public sailing cruises on actual clipper ships. Under the circumstances, we agree with Star Clippers' argument that it need not be a ship builder in order to claim a generic use of the word "Clipper."

Based on the record before us, we conclude that the word "Clipper" possesses no more than a generic meaning with regard to ships and related cruise services. *Webster's Third New International Dictionary* 424 (3d ed. 1981), defines a clipper as "a fast sailing ship; *esp:* a full-rigged ship of a type developed by American builders about 1840 characterized by long slender lines, an overhanging bow, tall raking masts, and a large sail area." A clipper ship is clearly a common term which has enjoyed a common meaning and usage. Under these circumstances, we conclude, CCL may not prohibit Star Clippers from describing its services as what they are— cruises aboard sailing ships bearing a strong resemblance to the clipper ships of old. As we stated in *WSM:*

> To avoid unreasonably restraining the public's use of the language, the exclusive appropriation of generic words must be discouraged. The public has an interest in the "natural enrichment of the language [and the prevention of the] 'diminution of the language through private acquisition.'" Folsom and Teply, *Trademarked Generic Words*, 89 Yale L.J. 1323, 1346 n. 110 (1980) (citations omitted).

724 F.2d at 1327.

We find the magistrate's determination that the term "Clipper" is descriptive and not generic, as adopted by the district court, to be clearly erroneous. Judgment reversed and remanded with directions to dissolve the preliminary injunction and to dismiss the complaint.

The mandate shall issue forthwith.

---

**3.** *See also Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75 (7th Cir.1977) (holding "lite" generic when used with respect to low calorie, mild tasting beer).