CARTER'S CUSTOM TILE
& REMODELING, INC.,
Plaintiff–Appellant,

v.

SOUTHWESTERN BELL TELEPHONE
CO., Defendant–Respondent.

No. 61059.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 4, 1992.

Joseph Scott Rubin, Clayton, for plaintiff-appellant.

John F. Medler, Jr., St. Louis, for defendant-respondent.

STEPHAN, Judge.

Carter's Custom Tile and Remodeling, Inc. ("CCT") sued Southwestern Bell Telephone Co. ("Bell") for breach of contract and negligence. Bell moved to dismiss for failure to state a claim upon which relief could be granted. The trial court sustained Bell's motion. We reverse and remand.

CCT rested its claim on the following pleaded facts. In the summer of 1989, CCT moved its business offices to Glendale, Missouri. In so doing, it obtained a new telephone number. On or about October 14, 1989, CCT's principal officer, Robert Carter ("Carter"), asked, and Bell agreed, to disconnect service at its old telephone number and place an "intercept"[1] on the line for one year so that business patrons, suppliers and other persons whose communications were vital to CCT's business interests, would be told to call the new number. Thereafter, CCT experienced a significant decline in phone calls and business volume. On or about January 4, 1990, Carter discovered that the intercept was not in place. Carter immediately notified Bell.

On or about May 13, 1991, CCT sued Bell for breach of contract and negligence, claiming: (1) lost business profits; (2) additional administration, labor and materials expenses; and (3) future business profits. CCT's petition sought damages of at least $5,000, but less than $15,000. On June 25, 1991, Bell filed a motion to dismiss alleging that CCT had failed to state a claim upon which relief could be granted. In that motion, Bell explained that it is regulated by the Missouri Public Service Commission. Chapters 386 and 392, RSMo. 1986 and RSMo.Cum.Supp.1991. Bell is required to file its Rate Schedules, referred to as the "General Exchange Tariff" ("the Tariff"), which lists the proposed telephone rates for Bell's subscribers. § 392.220, RSMo Cum. Supp.1991. Within the Tariff, Bell also includes limitation of liability provisions. The Missouri Public Service Commission then either approves, denies or modifies the Tariff. Once approved, the Tariff becomes part of Missouri law. *Warner v. Southwestern Bell Telephone Company*, 428 S.W.2d 596, 601 (Mo.1968); *Central Controls Company v. AT & T Information Systems*, 746 S.W.2d 150, 153 (Mo.App. 1988); *Tobler's Flowers v. Southwestern Bell Telephone Company*, 632 S.W.2d 15, 18 (Mo.App.1982).

Bell further explained that two of the limitation of liability provisions within its Tariff bar CCT's claims. § 17.7.2 states in pertinent part:

J. Telephone Numbers. [Bell] reserves the right to change the telephone number or numbers assigned to a customer ... as reasonably appropriate in the conduct of its business. The customer has no property right in any number ... assigned by [Bell] in the furnishing of telephone service.

Bell contended that this section barred CCT's claim because, since CCT has no property right in any telephone number, it has no standing to complain that it was not receiving calls from its old number. Moreover, § 17.8.3 states in pertinent part:

Interruptions of Service—The customer assumes all risk for damages arising out of mistakes, omissions, interruptions, delays, errors or defects in transmission, failures or defects in equipment and facilities furnished by [Bell] occurring in the course of furnishing service, in the telephone service or other communication services furnished him by [Bell], or of [Bell] failing to maintain proper standards of maintenance and operation and to exercise reasonable supervision, except as follows: If service is interrupted

---

1. An "intercept" is an automated recording which plays when a customer calls a number which has been changed or disconnected. The automated voice on the recording states: "The number you have dialed, (old telephone number), has been changed; please make a note of the new number, (new telephone number)."

other than by negligence or willful act of the customer, an allowance at the rate for that portion of the customer's service affected by the interruption shall be made for the time such interruption continued after the fact is reported by the customer or after detected by [Bell] and the interruption is for more than 24 hours. No other liability shall in any case attach to [Bell] in consideration of such interruptions.

. . . . .

Bell contended that this section barred CCT's claim because, since an intercept is "telephone service or other communication services", the customer assumes all risk for interruptions. On September 23, 1991, the trial court sustained Bell's motion to dismiss. On October 3, 1991, CCT filed its Notice of Appeal.

█ Review of a trial court's dismissal of a petition for failure to state a claim upon which relief can be granted is done by construing all averments liberally and accepting the facts pleaded as true. *Gipson v. Slagle*, 820 S.W.2d 595, 596 (Mo.App. 1991). If these facts and the reasonable inferences to be drawn from them viewed in the light most favorable to plaintiffs, invoke any principles of substantive law upon which relief can be granted, the trial court's ruling must be reversed. *Id.*

CCT contends that the trial court: (1) should have construed the limitations of liability provisions narrowly and, therefore, against Bell; and (2) the limitation of liability provisions are unconstitutional in that: (a) they are void for vagueness; (b) they are an unlawful delegation of the General Assembly's legislative power to the Public Service Commission; and (c) as applied, the provisions neither afford due process nor access to the courts.

█ At the outset, we address a threshold issue, our jurisdiction. As we have previously stated, CCT challenges the constitutionality of the limitations of liability provisions that are contained in the Tariff. Ordinarily, the Missouri Supreme Court has exclusive jurisdiction in cases involving the validity of a statute or provision of our State constitution. Mo.Const. art V, § 3.

Although CCT has not challenged a statute, the Tariff has the same force and effect as if directly prescribed by the legislature. *Midland Realty v. Kansas City Power & Light*, 300 U.S. 109, 114, 57 S.Ct. 345, 347, 81 L.Ed. 540, 544 (1937), *aff'g*, 338 Mo. 1141, 93 S.W.2d 954 (Mo.1936); *Pennsylvania Railroad Co. v. Chromcraft Corp.*, 424 S.W.2d 104, 105 (Mo.App.1967) ("The rates charged for interstate rail shipments are controlled by tariffs, published by the Interstate Commerce Commission.... Such tariffs have the same force and effect as a statute, and are binding on the carrier and the shipper alike."). As discussed above, once the Public Service Commission approved the Tariff, it became a part of Missouri law. *Warner v. Southwestern Bell Tel.*, 428 S.W.2d 596, 601 (Mo. 1968); *Central Controls Co. v. AT & T Inf. Sys.*, 746 S.W.2d 150, 153 (Mo.App.1988). Thus, it could be argued that this court does not have jurisdiction to decide CCT's constitutional challenges.

In this connection, we note that the Missouri Supreme Court will not exercise its jurisdiction unless the party raising the constitutionality claim has done so at the earliest opportunity and has properly preserved his point for review. *Bauldin v. Barton County Mut. Ins.*, 666 S.W.2d 948, 951 (Mo.App.1984). Thus, the complaining party must present the issue to the trial court and the trial court must rule on it. *Fahy v. Dresser Indus.*, 740 S.W.2d 635, 639 (Mo. banc 1987), *cert. denied*, 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988). Here, Bell confronted CCT with the limiting provisions of the Tariff for the first time in its motion to dismiss. CCT, therefore, should have raised its three challenges to the constitutional validity of the limiting provisions in its memorandum in opposition to Bell's motion to dismiss. However, CCT's memorandum does not contain any reference that would suggest that: (1) the limiting provisions are an unlawful delegation of the General Assembly's power to the Public Service Commission; or (2) as applied, the provisions neither afford due process nor access to the courts. Since these issues were not

presented to the trial court, they are waived. *RJJ by Johnson v. Shineman,* 658 S.W.2d 910, 915 (Mo.App.1983).

■ CCT did, however, present its void for vagueness argument in its memorandum in opposition to Bell's motion to dismiss. Specifically, CCT contended that it is unreasonable to conclude that the phrase "other communication services", as used in § 17.8.3, encompasses the provision of intercept service, since "other communication services" is nowhere defined.

Although CCT presented a constitutional challenge, the mere assertion of such a question does not deprive this court of jurisdiction. An appellant must show that the claim is real and substantial, not merely colorable. *Kansas City Star v. Shields,* 771 S.W.2d 101, 103 (Mo.App.1989). To survive a claim of vagueness, a law must be sufficiently precise that ordinary people can discern its meaning. *Duncan v. Missouri Bd. for Architects,* 744 S.W.2d 524, 531 (Mo.App.1988). Impossible standards of specificity are not required. *Id.* The "void for vagueness" doctrine applies to civil as well as to criminal cases. *Id.*

■ Although the phrase "other communications services" is not defined in the Tariff, it is logical to conclude that a communications service is a service provided by Bell to assist its subscribers in communicating with others. This is the function of an intercept service. As set forth above, when a person calls a line which has been disconnected, an automated voice on the recording states: "[t]he number you have dialed, (old telephone number) has been changed; please make a note of the new number, (new telephone number)." Intercepts, thus, allow callers to communicate with others whose telephone number has changed. If the intercept in the case at bar had properly been in place, it would have allowed CCT's business patrons, suppliers and other persons, whose communications were vital to CCT's business, to contact them. CCT's own claim of damages confirms this.

Moreover, we find no merit to CCT's assertion that "other communications services" is void for vagueness since "other communications services" is nowhere defined and, thus, is not defined to include intercepts. In this age of rapidly changing technology, it is unreasonable to expect that the Tariff would specifically enumerate every possible communication service. The adjective "communications" adequately serves to narrow the reach of the provision and clarify its meaning. Since CCT has failed to present a substantial constitutional claim, jurisdiction is properly maintained in this court.

■ Turning to the merits of this case, we initially note that Bell claims that CCT does not have standing because § 17.7.2J specifies that CCT has no property right in any telephone number. We disagree. CCT has not claimed rights to any specific number. Rather, CCT has claimed rights to contracted service. Thus, the cited provision has no bearing on CCT's claim.

■ Finally, CCT claims that the trial court erred in sustaining Bell's motion to dismiss because § 17.8.3 should not be read broadly so as to bar CCT's claim; rather, it should be narrowly construed against Bell. As we have already explained, intercept service falls within the definition of "other communication services" under § 17.8.3 of the Tariff. Thus, Bell's potential liability is limited to the extent allowed by this provision.

§ 17.8.3 specifies that if CCT's service was interrupted, other than by CCT's own negligence or willful act, CCT may be able to obtain a *pro rata* credit on its bill for that portion of service effected by the interruption for the time such interruption continues after: (1) CCT reported this fact to Bell; *or* (2) Bell detected this fact; *so long as* (3) the interruption was for more than 24 hours. Although Bell, in its "Reply to [CCT's] Memorandum in Opposition to [Bell's] Motion to Dismiss", argues: "[s]ince intercept service is provided free to Bell customers, [CCT] never received a bill and thus would not be entitled to any reimbursement", we are unable to conclude that CCT is precluded from recovering. If there is a charge for intercept service, then CCT may be entitled to recover. Moreover,

even if there is no specific charge for intercept service, it may be covered as part of the monthly service fee. Thus, these issues must be resolved by the trial court. We do note, however, that this is the total extent to which recovery should be permitted; for, § 17.8.3 stipulates: "[n]o other liability shall in any case attach to [Bell] in consideration of such interruptions."

Since the facts and reasonable inferences to be drawn from them, viewed in the light most favorable to CCT, invoke principles of substantive law upon which relief may be granted, we reverse this case and remand it to the trial court for further proceedings consistent with this opinion.

PUDLOWSKI, P.J., and CRIST, J., concur.