## SOUTHWESTERN BELL YELLOW PAGES, INC., Plaintiff/Respondent,

v.

## Mathew WILKINS, d/b/a Mathews Roofing Company, Defendant/Appellant.

### No. 67760.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 27, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 1996.

Application to Transfer Denied
May 28, 1996.

---

Mark Belz, St. Louis, for appellant.

Marjorie Morris Weisman, St. Louis, for respondent.

RHODES RUSSELL, Judge.

Defendant Mathew Wilkins ("Wilkins"), d/b/a Mathews Roofing Company, appeals the granting of summary judgment in favor of Plaintiff Southwestern Bell Yellow Pages, Inc. ("SWBYP") on its petition to recover amounts owed to SWBYP for advertisements. Wilkins also appeals the dismissal of his amended counterclaim for trademark infringement. We affirm.

Wilkins owned a roofing business in the St. Louis area. SWBYP and Wilkins entered into an advertisement agreement for the business on November 25, 1987, whereby Wilkins agreed to pay $13,296.00 for an advertisement to appear in SWBYP's 1988 St. Louis Southwestern Bell Yellow Pages Directory ("1988 Directory"). A similar agreement was executed on March 15, 1989 in the amount of $13,803.00 for an advertisement in SWBYP's 1989 Yellow Pages Directory ("1989 Directory"). The advertisements appeared under the heading "Roofing Contractors" and contained the telephone number "772–ROOF." Below the letters "ROOF" in the advertisements were printed the numbers "7663," the numbers which correspond with "ROOF" as displayed on the telephone dial.

In the 1988 Directory there also appeared in the yellow pages under "Roofing Contractors" an advertisement with the phone number "773–ROOF." As in Wilkins' advertisement, directly underneath the letters "ROOF" appeared the numbers "7663." This advertisement was for Ledbetter Roofing & Contracting, another roofing contractor in the St. Louis area.

SWBYP initially filed its petition on July 30, 1990, seeking to recover approximately $8,497.63 due under the 1988 Directory contract, plus late fees, interest and costs. The petition contained two counts: Count I for suit on account and Count II for breach of contract. On October 23, 1990, Wilkins filed an answer and "cross-petition" for breach of contract, asserting SWBYP breached its fiduciary obligation by having its agents procure business by using its logo and telephone number. This "cross-petition" was dismissed by stipulation of the parties, and leave was given to file an amended counterclaim. Wilkins filed its amended counterclaim, alleging infringement of tradename, trademark or design, on November 8, 1991. This amended counterclaim was dismissed on December 8, 1992 pursuant to SWBYP's motion for failure to state a claim upon which relief could be granted. Wilkins' motion to reconsider the dismissal was sustained. However, SWBYP's motion to dismiss the counterclaim on the same grounds was once again granted on March 22, 1994.

Meanwhile, SWBYP filed an amended petition on December 11, 1990 adding two more counts for delinquencies under the 1989 Directory contract. Counts I and II remained the same, while Count III claimed suit on account and Count IV alleged breach of contract. Counts III and IV of the amended petition requested the $13,803.00 outstanding balance under the 1989 contract, plus late fees, interest and attorney fees. The record, however, does not reflect that leave to amend the petition was ever sought or granted by the court.

On November 16, 1994, Wilkins filed his answer to SWBYP's amended petition. After filing his answer, Wilkins moved to strike SWBYP's first amended petition for failure to get leave for its filing. By memorandum dated November 22, 1994, the court denied Wilkins' oral motion to strike SWBYP's first amended petition and accepted the amended petition as filed. In that same memorandum the court granted in part SWBYP's motion to strike Wilkins' answer to the amended petition, ordering all affirmative defenses, if any, raised in the answer be stricken. A later attempt to strike SWBYP's first amended petition was also denied.

On November 30, 1994, SWBYP filed its motion for summary judgment and memorandum in support. On the date the motion was heard, January 11, 1995, Wilkins presented an affidavit of counsel as to the need for additional time for discovery and for additional time to respond to SWBYP's motion for summary judgment. Wilkins also filed an alternative motion to dismiss Counts III and IV of SWBYP's first amended petition, the counts pertaining to the 1989 Directory agreement, for failure to state a claim and violating the statute of limitations.

On January 26, 1995, the trial court issued its order denying Wilkins' renewed motion to strike SWBYP's first amended petition, denied Wilkins' request for additional time, and denied Wilkins' alternative motion to dismiss Counts III and IV of SWBYP's amended petition. Also on that date the trial court granted SWBYP's motion for summary judgment and awarded SWBYP $8,497.63, plus prejudgment interest and late fees, for breach of the 1988 Directory agreement and $13,803.00, plus prejudgment interest and late fees, for breach of the 1989 Directory agreement. A *nunc pro tunc* order was issued on November 27, 1995, correcting certain clerical errors and reaffirming the summary judgment in favor of SWBYP on all four counts of its amended petition. This appeal followed.

At issue in point one is the propriety of granting SWBYP's motion to dismiss Wilkins' counterclaim against it for trademark infringement. Wilkins asserts that dismissal was improper "because at least a genuine question exists as to whether the telephone number" in Wilkins' advertisement was a suggestive or generic term and whether the number was therefore a legally protectible trademark.

When the court on appeal reviews a motion to dismiss sustained by the trial court, we must determine whether the averments in the pleading invoke substantive principles of law entitling the claimant to relief. *Chase Electric Co. v. Acme Battery Mfg. Co.*, 798 S.W.2d 204, 208 (Mo.App.1990). On review of a trial court's order dismissing

for failure to state a claim, the pleadings are given their broadest intendment, all facts alleged are treated as true, and all allegations are construed in favor of claimant. *Scher v. Sindel*, 837 S.W.2d 350, 351 (Mo. App.1992). The conclusions of the claimant, however, are not admitted. *Id.*

In his amended counterclaim, Wilkins asserted he, in cooperation with SWBYP, developed and designed a distinctive trademark, namely "772–ROOF," and that he was the rightful owner and user of the trademark. The pleading also stated such trademark was widely published by SWBYP in conjunction with Wilkins' advertisement in the yellow pages and was so published in the yellow pages for approximately ten years. It further asserted SWBYP had "taken, infringed and converted" Wilkins' trademark, altering it only slightly, and caused it to be used and displayed under the name of another advertiser and competitor in the yellow pages, causing prospective customers to be confused as to the ownership of the respective businesses. Claimed damages included damages to the business' reputation and loss of business.

■ To state a cause of action for trademark infringement, the claimant must allege the following: (1) ownership of a distinctive mark; and (2) use of the similar mark is likely to cause confusion. *Gilbert/Robinson, Inc. v. Carrie Beverage–Missouri, Inc.*, 758 F.Supp. 512, 521 (E.D.Mo.1991), *rev'd in part on other grounds*, 989 F.2d 985 (8th Cir. 1993).

■ SWBYP contends Wilkins failed to state a claim because, as a matter of law, Wilkins has no cause of action against SWBYP since he has no ownership rights or property interest in the telephone number "772–ROOF." The key issue here of whether a telephone number or the suffix portion of the individual number may acquire trademark protection is an issue of first impression in Missouri.

In our telecommunications system telephone numbers are assigned by Southwestern Bell Telephone Company ("Bell Telephone"), which is regulated by the Missouri Public Service Commission. Chapters 386 &

392 RSMo 1994. Pursuant to such, Bell Telephone is required to file its rate schedules referred to as "General Exchange Tariffs" with the Missouri Public Service Commission, who either approves, denies or modifies the tariff. If approved, the tariff becomes part of the law of Missouri. *Carter's Custom Tile v. Southwestern Bell Telephone Co.*, 834 S.W.2d 892, 893 (Mo.App. 1992).

SWBYP maintains there is a specific General Exchange Tariff, § 17.7.2(J), negating Wilkins' claim of ownership. That section provides in pertinent part:

J. Telephone Numbers—The Telephone Company reserves the right to change the telephone number or numbers assigned to a customer or the central office designation associated with such telephone number or numbers, or both, as reasonably appropriate in the conduct of its business. The customer has no property right in any number or central office designation assigned by the Telephone Company in the furnishing of telephone service.

SWBYP claims this section bars Wilkins' claim for trademark infringement. We agree. An approved tariff like § 17.7.2(J) has the same force and effect as if directly prescribed by the legislature. *Carter's*, 834 S.W.2d at 894. Section 17.7.2(J) specifically states a customer has no property right in any telephone number. As a result, Wilkins cannot claim any ownership right in the number "772–ROOF," thereby foreclosing any claim for trademark infringement.

■ Wilkins nonetheless argues he is "the rightful owner" due to his past and present use of the number and its publication in the yellow pages in conjunction with his business for approximately ten years. Wilkins is correct that ownership can be proven through long-term usage. To claim ownership of a distinctive mark, the party asserting the right must demonstrate that his use of the mark has been of such a nature and for such a duration that it has come to identify goods bearing it as originating from that party. *Gilbert*, 758 F.Supp. at 522. The party must demonstrate its right in the mark through long, continuous use, extensive advertising and public acceptance of the mark, such that

the public associates the mark with the goods, distinguishing them from other goods. *Id.*

■ Wilkins' claim of trademark infringement predicated upon his own allegation of "rightful ownership" is purely conclusory. Mere conclusions by the pleader that are not supported by factual allegations are to be disregarded when considering whether a petition is sufficient to sustain dismissal for failure to state a claim upon which relief can be granted. *Johnston v. Norrell Health Care, Inc.,* 835 S.W.2d 565, 567 (Mo.App. 1992). Wilkins' bare allegation of ownership alone is insufficient basis to support his claim for trademark infringement.

■ Another element effecting Wilkins' claim for trademark infringement is the distinctiveness of the mark wanting protection. Whether a mark is entitled to trademark protection is determined by categorizing the subject marking as either (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. *Gilbert,* 758 F.Supp. at 522. Markings falling within category four are generally inherently distinctive and enjoy the broadest protection. *Id.* Those falling within the third category are less distinctive than those in the fourth category, and therefore a weaker mark, but will nonetheless be protected without proof of a secondary meaning. *Id.* A suggestive mark is one which subtly connotes something about the service or product. *Id.* Markings falling within the second category generally tell something about the product and are only protected when a secondary meaning is shown. *Id.* The first category covers generic terms, which are terms that communicate information about the nature or class of an item or service. *Id.*

Generic terms enjoy no trademark protection. *Id.*

■ Wilkins contends the telephone number, or rather the suffix "ROOF," is protectible as a suggestive mark. SWBYP, in contrast, argues the term is generic and therefore not subject to protection. After reviewing the few cases touching upon the issue of generic terms in this state, along with persuasive authority of other states, we are led to conclude the number including the suffix "ROOF" is a generic term, not protectible under trademark law.

■ A generic term is one which is used as the name or description of a type of business. *Cornucopia, Inc. v. Wagman,* 710 S.W.2d 882, 887 (Mo.App.1986). It typically refers to a particular genus or class of which the individual business is a member. *Id.* The term "ROOF," as used as part of a telephone number, undeniably communicates the nature of Wilkins' business, that is, his roofing business. The general public would understand the word "ROOF'" to refer to businesses engaged in the placement, repair or maintenance of roofs. Wilkins falls within that category and is a member of that business group. The suffix "ROOF'" as incorporated in the telephone number is of a common, generic nature and therefore has no trademark protection.[1] *See, e.g., Dranoff–Perlstein Associates v. Sklar,* 967 F.2d 852, 855–63 (3d Cir.1992) (telephone number which correlated with generic term "INJURY" found to be generic and unprotectible under trademark law); *Cytanovich Reading Center v. Reading Game,* 162 Cal.App.3d 107, 208 Cal.Rptr. 412, 415–16 (1984) (user of telephone number "321–READ" had no protectible trademark interest in suffix "READ" where word was of common usage).[2] To

---

1. For a discussion of the topic of granting protection to telephone numbers corresponding to generic terms, *see generally* Anthony L. Fletcher & David J. Kera, *The Forty–Third Year of Administration of the Lanham Trademark Act of 1946,* 80 Trademark Rep. 591, 675–76 (1990).

2. *But see, e.g., Dial–A–Mattress Franchise Corp. v. Page,* 880 F.2d 675, 677–78 (2d Cir.1989) (holding that competitor's use of a confusingly similar telephone number can constitute either trademark infringement or unfair competition and enjoining competitor's use of "1–800–MATTRESS" to protect plaintiff's local use of tele-

phone number "MATTRESS"); *Murrin v. Midco Communications, Inc.,* 726 F.Supp. 1195, 1199–1201 (D.Minn.1989) (enjoining competitor's use of "Dial LAWYERS"); *SODIMA v. Int'l Yogurt Co.,* 662 F.Supp. 839, 852–54 (D.Or.1987) (recognizing common law trademark right in "800–YO CREAM"); *American Airlines, Inc. v. A 1–800–A–M–E–R–I–C–A–N Corp.,* 622 F.Supp. 673, 684–86 (N.D.Ill.1985) (granting airline holding registered mark "AMERICAN AIRLINES" injunction against travel agency's use of number "1–800–A–M–E–R–I–C–A–N"); *Chicago World's Fair—1992 Corp. v. 1992 Chicago World's Fair Comm'n,* No.

grant such a generic term protection, even though contained within a telephone number, would deprive others of the right to refer to their services or products by their common name, especially in this time when it is common for businesses to use a catchy word or easily remembered term in their phone numbers as a marketing technique. *See Clipper Cruise Line, Inc. v. Star Clippers, Inc.,* 952 F.2d 1046, 1047–48 (8th Cir.1992). Granting protection to generic terms that correspond with certain telephone numbers would be particularly harsh in our modern era with the plethora of "800" and "900" numbers and when phone companies have had to change area codes and add to existing number variations to accommodate the outgrowth in cellular telecommunications systems.

Based on the foregoing analysis, we find the amended counterclaim did not contain the necessary elements to support a claim for trademark infringement. Dismissal of Wilkins' counterclaim was therefore proper. Point denied.

■ In point two Wilkins argues the trial court erred in denying his motion to strike SWBYP's first amended petition. The basis of Wilkins' motion to strike was SWBYP's failure to get leave of court or the consent of the parties to file the amended petition.

Rule 55.33(a) governs when a pleading may be amended. A party is allowed to amend his pleading once at any time before a responsive pleading is served; otherwise, the party may amend the pleading only by leave of court or by written consent of the opposing party. The rule specifically states that leave shall be freely given when justice so requires. Rule 55.33(a).

■ The principle underlying the amendment rule is to liberally allow amendments when justice so requires. That is not to say that a party has an absolute right to amend the pleading. *Downey v. Mitchell,* 835 S.W.2d 554, 556 (Mo.App.1992). Rather, the trial court is given broad discretion whether to allow the amendment and we will not disturb its decision absent a clear and palpable abuse of that discretion. *Id.*

In the case at bar, both parties concede there was no official leave requested or granted allowing SWBYP to file its amended petition. SWBYP filed the amended petition after Wilkins filed his answer and some four months after filing its original petition. The amended petition added two counts, one for a suit on account and the other for a breach of contract, both of which pertained to Wilkins' breach of the 1989 Directory agreement for nonpayment. Almost four years after the amended petition was filed, Wilkins raised for the first time the issue of SWBYP's failure to get leave of court for the filing. The court ruled against Wilkins on his motion to strike, stating it "hereby accepts SWBYP's First Amended Petition as filed. . . ."

■ Reviewing the facts and circumstances of the case, we find no abuse of discretion in denying Wilkins' motion to strike. The law is clear that amendments should be granted liberally as justice requires. Where the amended pleading was filed shortly after the original petition, though after the responsive pleading, and the amendment does not change the nature of the litigation, we do not feel a hypertechnical reading of the rules is called for. Keeping in mind the discretion owed the trial court and the underlying purpose of Rule 55.33(a), we find no error in allowing the parties here to proceed on SWBYP's amended petition. The recognized purpose for allowing amendments to pleadings is to allow a party to present evidence that was overlooked or unknown at the time the original pleading was filed but without changing the original cause of action. *Gardner v. City of Cape Girardeau,* 880 S.W.2d 652, 656 (Mo.App.1994). The additional counts made in the amended petition did not change the cause of action but merely added charges not fully realized at the time of the original filing. The additions therefore did not change the nature of the case or cause Wilkins to materially modify his defense of the action. This lack of prejudice is further supported by Wilkins' actions in failing to contest the amended petition until four years later.

83–C–3424, slip op. (N.D.Ill. Aug. 16, 1983) (disallowing use of telephone number "434–1992"

where previous user had telephone number "444–1992").

Though the court did not expressly grant leave to amend, the amendment was filed with the court, all parties received notice of the amendments and proceeded with the litigation and discovery. Later, after the motion to strike was filed, the court noted its acceptance of the amended pleading. Under the circumstances, denying the motion to strike was not an abuse of discretion.

■ In the alternative, Wilkins argues error in denying his motion to dismiss Counts III and IV of the amended petition as being time barred by the applicable five year statute of limitations. This argument is based on the belief the amended petition was not filed for statute of limitations purposes until the court's acceptance of the amended petition on November 22, 1994. We disagree. The amended petition was filed with the court, according to the minute entries, on December 11, 1990. Wilkins received notice of its filing and, as addressed above, has not shown he was prejudiced by the court's acceptance of the amended pleading. The additional claims asserted in SWBYP's amended pleading arose out of conduct or transactions tied to (or rather a continuation of the breach) asserted in Counts I and II of SWBYP's original petition. The amended petition therefore related back to the date of the original pleading under Rule 55.33(c) and was timely.[3] Point denied.

Wilkins' remaining two points pertain to the trial court's granting of SWBYP's motion for summary judgment. As a preliminary matter we note that the points fail to comply with Rule 84.04 in that they do not contain any citations to authority. Counsel is reminded of the principles enunciated in *Thummel v. King,* 570 S.W.2d 679, 687 (Mo. banc 1978). "If the point is one for which precedent is appropriate and available, it is the obligation of appellant to cite it if he expects to prevail." *Id.*

■ Ignoring these deficiencies in briefing, the points fail on the merits. In point three Wilkins claims error in denying his request for additional time to respond to SWBYP's motion for summary judgment. Wilkins argues he needed additional time to complete further discovery because SWBYP raised new issues in its summary judgment motion.

Rule 74.04 provides the procedure for allowing additional time for discovery after the filing of summary judgment. That rule gives the trial court discretion "[f]or good cause shown" to continue the motion for a reasonable time until the requested discovery is complete.

Here, SWBYP filed its motion for summary judgment on November 30, 1994. Then, on January 9, 1995, Wilkins filed a motion for additional time for discovery and for additional time to respond to the summary judgment motion. Attached to Wilkins' motion was an affidavit of counsel, claiming the issues of prejudgment interest and attorney's fees as prayed for in SWBYP's summary judgment motion were never previously pled and therefore additional time and discovery were necessary. The affiant stated he had not had sufficient time to conduct discovery on those specific issues and further discovery during December 1994 and January 1995 was not possible because of the holiday season.

First, we note that Wilkins' motion for additional time was untimely. Wilkins failed to file his responsive pleading to SWBYP's summary judgment motion within the 30 day period called for under Rule 74.04(c)(2). Instead of timely filing the motion for additional time, Wilkins waited for the 30 day response period to lapse and then claimed new issues were raised. Under the circumstances we cannot say the trial court abused its discretion in denying Wilkins' motion.

Also noteworthy is the fact that this action was initiated in July 1990 based on a breach of contract theory. The advertising contracts at issue in this proceeding contained clauses to recoup interest and attorney's fees. The need for more time to conduct discovery in light of what Wilkins deemed

---

**3.** The parties are in disagreement over which statute of limitations provision applies in this case: § 516.120 (five-year statutory period) or § 516.110 (ten-year statutory period). It is un-necessary for us to analyze in-depth the applicability of both to the present action because under either section, the action here was timely filed.

were new issues was not sufficiently shown. Point denied.

In his last point, Wilkins complains:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING SWBYP'S MOTION FOR SUMMARY JUDGMENT DESPITE THE FACT THAT WILKINS HAD RAISED MATERIAL ISSUES OF FACT IN HIS ANSWER AND COUNTER-CLAIM.

Besides not citing any authority, the point relied on does not comply with the wherein and why requirements of Rule 84.04(d). Specifically, the point fails to identify what material fact issues were raised which would have supported denying summary judgment.

Furthermore, the point itself and argumentation following shows a startling misunderstanding of the law of summary judgment. Our review of the granting of summary judgment is essentially *de novo*, not an abuse of discretion standard. *ITT Commercial Finance Corp. v. Mid–Amer. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when the moving party has demonstrated there is no genuine issue of material fact along with a right to judgment as a matter of law. *Id.* at 380. It is then up to the non-moving party to set forth specific facts in response showing the existence of a genuine issue for trial. *Id.* at 381. A "genuine issue" is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.* at 382. When the "genuine issue" raised is argumentative, imaginary or frivolous, summary judgment is proper. *Id.* ·

Here, Wilkins asserts an issue exists as to whether SWBYP breached its contract with Wilkins before Wilkins stopped payments under the contract. This issue formed the basis of the affirmative defense raised earlier by Wilkins which was stricken by the court before summary judgment was sought. Because SWBYP was not faced with an affirmative defense at the time summary judgment was sought, it was not obligated to show the nonviability of that claim for purposes of summary judgment. *Id.* at 381. Its only burden was to establish there was no genuine

dispute as to the material facts and its right to judgment as a matter of law.

Wilkins' argument in his brief fails to raise a genuine issue for trial or otherwise contradict SWBYP's entitlement to judgment. Wilkins therefore did not meet his burden and, because SWBYP had already established a right to judgment as a matter of law, summary judgment was properly entered. The order of the trial court granting summary judgment on all counts is affirmed.

Judgment affirmed.

SMITH, P.J., and GARY M. GAERTNER, J., concur.