*316
 
 PUDLOWSKI, Judge.
 

 Appellant, Allstates Transworld Vanlines, Ine. (Allstates) sued Respondent, Southwestern Bell Telephone Company (SWBT), for damages resulting from the interruption of its telephone service. As a result of a delinquent account, SWBT suspended Allstates’ telephone service at various intervals from September 1982 to February 1983. All-states’ theory of liability, as enumerated in its petition, was grounded in the contention that SWBT had violated tariffs approved by the Public Service Commission (Commission). The jury found SWBT liable for wrongful termination of the Allstates’ telephone service and awarded $4,000,000 in actual damages and $8,000,000 in punitive damages. The trial court denied SWBT’s motion for judgment notwithstanding the verdict (JNOV motion). The trial court then granted SWBT’s motion for a new trial on grounds of juror misconduct. Allstates appeals contending that the trial court erred in granting the motion for a new trial for juror misconduct. SWBT, in its brief, included several additional issues for appeal, and Allstates addressed them in its reply brief.
 

 We hold that the trial court erred in denying SWBT’s JNOV motion as Allstates did not present a submissible case because the tariff allowed SWBT to disconnect service for nonpayment of Yellow Page advertising bills. We set aside the trial court order granting the motion for a new trial. We reverse and remand to the trial court to enter an order granting SWBT’s JNOV motion. Consequently, all other issues on appeal are moot and will not be addressed.
 

 In point one of its response brief, SWBT claims that the trial court erred in denying its JNOV motion. A JNOV motion “challenges the submissibility of the plaintiffs case.”
 
 White v. Union Pacific R. Co.
 
 871 S.W.2d 50, 52 (Mo.App. E.D.1993), cert. denied, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). To make a submissible case, substantial evidence is required for every fact essential to liability.
 
 Allison v. Sverdrup & Parcel & Assoc., Inc.,
 
 738 S.W.2d 440, 455 (Mo.App.1987).
 

 In determining whether Allstates made a submissible case, we must view the evidence in the light most favorable to it. We presume its evidence to be true and give it the benefit of all reasonable inferences to be drawn from it.
 
 Nettie’s Flower Garden v. SIS Inc.,
 
 869 S.W.2d 226, 231 (Mo.App. E.D.1993).
 

 Allstates’ president and principal owner, Timothy Person, Sr., joined his father’s local moving and storage business in 1953. In 1963, Timothy Person purchased a company called Allstates Van Lines and operated this company from St. Louis. In 1977, he formed Allstates Transworld Van Lines, Ine., and in February 1980, the Interstate Commerce Commission granted Allstates a national permit with authority to start operating on June 11,1980.
 

 In 1981, Allstates was approved by the Military Traffic Management Command (MTMC) to serve as a carrier of household goods for military personnel. MTMC is responsible for moving the household goods of military personnel for all of the service branches when they change stations. As a result of the disconnection of service, as hereinafter discussed, the MTMC ceased any business contracts with Allstates.
 

 In 1982, Allstates was experiencing cash flow problems. As a result, Mr. Person contacted Herman Thompson, a personal friend and lawyer, and asked him to review All-states’ corporate financial ledgers. After review, Mr. Thompson advised Mr. Person, among other things, that Allstates could reduce its monthly expenditures by delaying payment for its Yellow Page advertising. He advised further that Allstates did not have to pay for the Yellow Page advertising in order to maintain its telephone services and that SWBT could not sever Allstates’ telephone service for non-payment of those charges.
 

 Allstates’ telephone service was interrupted at various intervals from late September 1982 until March 1983. At all times of interruption Allstates had a delinquency in its Yellow Page advertising account.
 

 In point one of its response brief, SWBT challenges the submissibility of All-states’ cause of action. This contention turns
 
 *317
 
 on an interpretation of a tariff approved by the Commission, which regulates SWBT. During the pertinent times in 1982 and 1983, the Commission regulated both telephone service and Yellow Page advertising.
 
 Videon Corp. v. Burton,
 
 369 S.W.2d 264 (Mo.App.1963).
 
 [1]
 
 A tariff, when approved by the Commission, becomes Missouri law.
 
 Carter’s Custom Tile v. Southwestern Bell Telephone Co.,
 
 834 S.W.2d 892, 893 (Mo.App.1992).
 

 In defending the submissibility of its case, Allstates claims that the theory of liability was based on a common law cause of action as presented in
 
 Haynam v. Laclede Electric Cooperative, Inc.,
 
 827 S.W.2d 200, (Mo. banc 1992). It is clear from Allstates’ petition, however, that its theory of liability was based on a violation of the tariffs approved by the Commission. In its petition, Allstates claimed that “Pursuant to tariffs approved by the public service commission, defendant could not disconnect plaintiff’s telephone service if the line and long distance charges have been paid. Defendant, without just cause or excuse, disconnected plaintiffs telephone service for approximately 45 days.” Allstates’ reliance on
 
 Haynam
 
 is misplaced.
 
 Haynam
 
 presents a factual situation much different than the instant ease. In
 
 Haynam,
 
 the Supreme Court held that a plaintiff seeking recovery in tort for wrongful termination of electrical service is required to show that defendant acted negligently in its failure to supply electrical service.
 
 Id.
 
 at 204. While electric service utilities are also regulated by the Commission, the defendant electric utility did not have a tariff providing for limitations on liability for termination of service. During the periodical cessation of Allstates’ telephone service, SWBT had an approved tariff filed with the Commission which, at that time, regulated both line service and Yellow Page advertising. Accordingly, we will analyze the submissibility of Allstates’ claim according to the applicable tariff and whether or not Allstates presented substantial evidence to support a violation of the tariff by SWBT.
 

 As we have previously stated, a tariff that has been approved by the Commission becomes Missouri law.
 
 Carter’s Cuetom Tile,
 
 834 S.W.2d at 893. As a result, the tariffs have the same force and effect as a statute directly prescribed from the legislature.
 
 Id.
 
 Therefore, we analyze a tariff as we do a statute. If a statute, or in this case, a tariff, is clear and unambiguous, we cannot give it another meaning.
 
 Northland Ins. Co. v. Bess,
 
 869 S.W.2d 157, 159 (Mo.App. E.D.1993). In determining whether the language of a tariff is clear and unambiguous, the standard is whether the tariffs terms are plain and clear to one of ordinary intelligence.
 
 Wolff Shoe Co. v. Director of Revenue,
 
 762 S.W.2d 29, 31[3-5] (Mo. banc 1988).
 

 In 1982, the applicable tariff, referring to business service, provided:
 

 The customer is responsible for payment of all
 
 charges for services and equipment
 
 furnished the customer, including charges for services originated or charges accepted at the customer’s station and including any charges transferred to the customer’s account pursuant to Paragraph 25.4.2,B where the customer has executed a Contract of Guaranty for an applicant or present customer.
 

 Upon nonpayment of
 
 any sum due
 
 the Telephone Company, the Telephone Company may, after five days’ written notice has been furnished the customer, without incurring any liability, forthwith discontinue the furnishing of said
 
 service.
 
 If, in the judgment of the Telephone Company, unusual risk of financial loss exists, service may be suspended after forty-eight hours’ written notice has been furnished to the customer, (emphasis added).
 

 P.S.C. — Mo. No. 22, General Exchange Tariff Section 25.6.1 (effective July 1, 1979); App. p. 5a.
 

 
 *318
 
 Although the term “service” is not defined by the tariff itself, it is construed by the Missouri statute which empowers the Commission to regulate Telephone Companies. The definition for “service” at the time of the discontinuance read as follows:
 

 The term “service,” when used in this chapter, is used in its broadest and most inclusive sense and includes not only the use and accommodations afforded consumers or patrons, but also
 
 any product or commodity by any corporation, person or public utility
 
 (emphasis added) and the plant, equipment, apparatus, appliances, property and facilities employed by any corporation, person or public utility in performing any service or in furnishing any product or commodity and devoted to the public purposes of such corporation, person or public utility, and to the use and accommodation of consumers or patrons. § 386.020 RSMo (1978).
 
 See also,
 
 § 392.180 RSMo (1978).
 

 The statute specifically expresses the intent to view “service” in its “broadest and most inclusive sense.” The definition includes “any product” furnished by “any utility.” We find that, given this broad definition of service, Yellow Page advertising fell within the boundaries of the statute’s definition during the telephone interruptions in 1982 and 1983. Accordingly, the tariff authorized SWBT to discontinue line service for “any sum due,” whether that sum was due for line service or Yellow Page advertising.
 

 Allstates claims that “any sum due” means only amounts due for “service and equipment,” or for “said service.” It claims that the Yellow Page advertising is not a “service” and, therefore, amounts due for it are not included in “any sum due.” We disagree. As we stated above, we find that Yellow Page advertising is a service for the purposes of the tariff. We find further that the pertinent language in this tariff is clear and unambiguous. SWBT was authorized to discontinue service for “any sum due,” as long as proper notice was given. The tariff does not define “any sum due.” It is not necessary to do so. The phrase is plain and clear to a person of ordinary intelligence. “Any sum due” means exactly what it says. It means any sum due SWBT, whether it be for line service or Yellow Page advertising. The two accounts were co-dependent. There would be no Yellow Page account without first having business line service. The amounts due for Yellow Pages and for line service were included on the same bill sent to consumers. It follows that “any sum due” includes all amounts owed to SWBT, whether for business line service or Yellow Page advertising.
 

 In its reply brief, Allstates claims that SWBT did not prove that it complied with the notice requirement of the tariff. In order to have presented a submissible case, however,
 
 Allstates is required to prove that SWBT violated the notice requirement.
 
 Allstates never claimed that it did not receive proper notice that its telephone service was going to be interrupted. The only evidence presented on the issue came from testimony of a SWBT representative. The representative testified as to a notation on the customer’s bill which indicates that a computer generated notice is sent out on the date indicated on the bill, termed the RA2 date. On cross-examination, Allstates established only that SWBT could not prove that the notice was sent or received by Allstates as it was not sent by certified mail. The tariff does not require a certified notice. Allstates did not, at any time, assert that it did not receive these notices. In its brief, Allstates claims that the September 27, 1982 RA2 date was only two days before the suspension of service on September 29, and was, therefore, in violation of the 5 day notice requirement. On September 29, however, Allstates still had a delinquency from August, for which an RA2 date was August 27, 1982. Most importantly, Allstates did not present any evidence to suggest that it did not receive the August notice or any of the other notices. In his direct testimony, Mr. Person, Allstates’ president, never denied that his company received proper notice. It was Allstates’ burden to do so in order to prove a notice violation of the tariff. As a result, it did not present a submissible case on the issue.
 

 There is no dispute as to the fact that a delinquency existed for Yellow Pages advertising at all times of interruption of telephone service. Allstates presented no evidence that there was a violation of proper notice. Consequently, viewing the evidence in a light most favorable to Allstates, we find a failure
 
 *319
 
 of substantial evidence to establish that SWBT violated the tariff.
 

 Where a plaintiff prevails in the trial court and an appellate court reverses because of insufficient evidence the preference is for remand for a new trial.
 
 Moss v. National Super Markets, Inc.,
 
 781 S.W.2d 784[3] (Mo. Banc 1989). Reversal without remand is appropriate only if the appellate court is persuaded the plaintiff cannot make a submissible case on retrial.
 
 Id.
 
 Addressing that issue, we conclude from the record that Allstates has presented all available evidence on the issue of liability and cannot muster additional evidence sufficient to make a submissible case. Therefore, remand for a new trial is unwarranted.
 
 Lance v. Van Winkle,
 
 358 Mo. 143, 213 S.W.2d 401, 40405[11] (1948).
 
 State v. Gray,
 
 895 S.W.2d 241 (Mo.App.1995).
 

 We hold, therefore, that Allstates did not present a submissible case and the trial court erred by denying SWBT’s JNOV motion. We set aside the trial court’s order granting a new trial. We reverse and remand to the trial court to enter an order granting SWBT’s JNOV motion.
 

 CRANE, P.J., and GERALD M. SMITH, J., concur.
 

 [1]
 

 . The Commission lost its authority to regulate Yellow Pages in 1985 when the legislature amended § 386.330 RSMo 1994 to take away that power in recognition of the fact that divestiture of the Bell system resulted in the transfer of the Yellow Pages business to a separate entity from the one providing the telephone service. Accordingly, the Commission, and the tariffs approved by it, no longer regulates Yellow Page advertising as it did in 1982 when this cause of action arose.
 
 See generally, Garrison
 
 v.
 
 Public Service Commission,
 
 772 S.W.2d 670, 672 (Mo.App.1989); § 386.330.4 RSMo 1994.